IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NENAD M. KOSTIC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | NO. 3:10-cv-2265-M |
| | § | |
| TEXAS A&M UNIVERSITY AT | § | |
| COMMERCE, ET AL., | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE**
<u>**UNITED STATES MAGISTRATE JUDGE**</u>

This case has been referred to the United States magistrate judge for determination of cross-motions for summary judgment [Dkt. Nos. 56 & 61] pursuant to 28 U.S.C. § 636(b) and an order of reference from the District Court. *See* Dkt. No. 98. The undersigned magistrate judge issues the following findings of fact, conclusions of law, and recommendation on Defendants' Motion for Summary Judgment [Dkt. No. 61] and Plaintiff's Motion for Partial Summary Judgment [Dkt. No. 56].

**Background**

Plaintiff Nenad Kostic is a former tenured professor and former head of the chemistry department at Texas A&M University at Commerce ("TAMUC") who was terminated for cause. He sues his former employer, TAMUC, and five TAMUC officials and professors: Michael D. McKinney, former Chancellor; Dan R. Jones, President and Chief Executive Officer; Larry F. Lemanski, Provost and Vice President for Academic Affairs; Christine Evans, former Dean of the College of Arts and Sciences and current

-1-

Professor of Agricultural Sciences; and Ben W.L. Jang, Head of the Chemistry Department and a Professor of Chemistry.

In his Second Amended Complaint, Plaintiff alleges that TAMUC retaliated against him for his opposition to prohibited practices and participation in protected activities, in violation of Title VII. Dkt. No. 40 at 295-315. He asserts 42 U.S.C. § 1983 claims against all of the individual defendants for retaliation and alleged violations of his constitutional rights of free speech and free association and asserts a claim that they deprived him of his liberty interest in his reputation without due process of law. He asserts a Section 1983 claim against McKinney, Jones and Lemanski for allegedly depriving him of his property interest in continued employment and tenure without due process of law. *Id.* at 315-51. He also asserts a defamation claim against Jones, Lemanski, Evans, and Jang. *Id.* at 351-54. Plaintiff seeks damages, injunctive relief, declaratory judgment, and attorneys fees. *Id.* at 355.

The only issue raised in Plaintiff's Motion for Partial Summary Judgment is whether he is entitled to a jury trial. *See* Dkt. No. 56. In their Motion for Summary Judgment, Defendants argue that Plaintiff cannot prevail on any of his causes of action as a matter of law because he cannot establish at least one element of each claim. *See* Dkt. No. 61.

**Legal standards**

Under Fed. R. Civ. P. 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual "issue is material if its

resolution could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003). "A factual dispute is 'genuine,' if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997).

If the moving party seeks summary judgment as to his opponent's claims or defenses, "[t]he moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998). "Once the moving party meets this burden, the nonmoving party must set forth" – and submit evidence of – "specific facts showing a genuine issue for trial and not rest upon the allegations or denials contained in its pleadings." *Id.*; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc).

The Court is required to view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party and resolve all disputed factual controversies in favor of the nonmoving party – but only if both parties have introduced evidence showing that an actual controversy exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005); *Lynch Props.*, 140 F.3d at 625. "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment,"*Brown v. City of Houston,* 337 F.3d 539, 541 (5th Cir. 2003), and

-3-

neither will "only a scintilla of evidence" meet the nonmovant's burden, *Little*, 37 F.3d at 1075. Rather, the non-moving party must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). If, "after the nonmovant has been given an opportunity to raise a genuine factual issue," "the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial." *DIRECTV, Inc. v. Minor*, 420 F.3d 546, 549 (5th Cir. 2005); *Steadman v. Texas Rangers*, 179 F.3d 360, 366 (5th Cir. 1999). The Court will not assume "in the absence of any proof ... that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment," and "[a] failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (internal quotation marks omitted).

## Analysis

### I.

Defendants' Motion for Summary Judgment should be granted as to Plaintiff's

Title VII and Section 1983 retaliation claims. To establish his *prima facie* case of retaliation under either Title VII or Section 1983, Plaintiff must show: (1) he engaged in protected activity; (2) he suffered an adverse employment action; and (3) a causal link existed between the protected activity and the adverse employment action. *Aryain v. Wal-Mart Stores Texas LP*, 534 F.3d 473, 484 (5th Cir. 2008) (Title VII); *Sharp v. City of Houston*, 164 F.3d 923, 932 (5th Cir. 1999) (Section 1983). The causal link between the allegedly protected conduct and termination is broken where the official with final authority to fire employees conducts an independent investigation in the course of reaching his or her decision. *Mato v. Baldauf,* 267 F.3d 444, 450 (5th Cir. 2001). "The causal link is not broken, however, where the decision-maker 'rubber-stamps' the firing recommendation of subordinates; in such cases, ... the decision-maker acts as a conduit of the subordinates' improper motive." *Id.* Here, Plaintiff cannot establish the causation element of his retaliation claims as a matter of law because Chancellor McKinney – who had final authority to fire Plaintiff – relied on the appeals committee's independent investigation in reaching his termination decision; therefore, the causal link was broken.

Plaintiff asserts that Defendants retaliated against him for his opposition to prohibited practices and participation in protected activities, including what he characterizes as his opposition to the establishment of religion and exercising his rights of free speech and free association. For example, it is undisputed that Plaintiff assisted Chunki Shi, a former postdoctoral assistant, in preparing a formal complaint

against TAMUC accusing Defendant Jang of proselytization and pressuring Shi to join his church. It is also undisputed that Plaintiff spoke out against what he considered prohibited religious activities, such as closing the university in observance of Good Friday and conducting a Celebration of Faith that included prayer, and that he criticized TAMUC to the press and fire chief after a laboratory fire in the chemistry department. Plaintiff claims that these activities formed the basis of escalating and extensive retaliation against him, which ultimately culminated in his termination for cause.

Conversely, it is undisputed that Plaintiff was the subject of numerous complaints during his tenure at TAMUC. These ranged in scope from student complaints that Plaintiff would not allow anyone in his classes to drop a class to a formal complaint by the faculty of the chemistry department to a petition signed by over 400 students calling for his dismissal. Although he denies the substance of the accusations, Plaintiff was accused of fostering an atmosphere of hostility in the chemistry department and of abusive, combative, and disrespectful treatment of students, faculty, and staff.

On June 17, 2010, Defendant Jones, TAMUC President, gave Plaintiff written notice of TAMUC's intent to terminate his employment for cause. *See* Dkt. No. 63-4 at APP433-34. President Jones informed Plaintiff that the grounds for termination were based on professional incompetence, moral turpitude adversely affecting the performance of duties or the meeting of responsibilities to TAMUC or its students or associates, and violation of TAMUC policies, system regulations, rules, or laws

substantially related to performance of faculty duties. *Id.* President Jones also listed twelve specific violations supporting those grounds. *Id.* Those violations included sending a letter to a pregnant student's physician requesting medical information, denying a student's request to drop a class and harassing her about her medical condition, publicly humiliating two students in front of their peers, humiliating four TAMUC employees or potential employees, purchasing chemicals with Higher Education Funds and shipping them to another university that had no current working relationship with TAMUC, and sexual harassment of two female students. *Id.* It also addressed complaints in the "[p]etition received from over 400 students stating that you have 'fostered an atmosphere of hostility, discrimination, unfair grading practices, and sexual harassment.'" *Id.* The information in the notice-of-termination letter came from previous committee investigations. *See* Dkt. No. 63-6 at APP734. None of the allegedly protected activities were mentioned. *See* Dkt. No. 63-4 at APP433-34.

President Jones referred Plaintiff's appeal of the decision to terminate him for cause to the University Hearing Committee, which formed an appeals committee comprised of fifteen tenured faculty members selected by their academic departments. *See* Dkt. No. 63-4 at APP548. The appeals committee conducted an evidentiary hearing on November 9, 2010, which lasted over twelve hours. *Id.* at APP549. It heard testimony from thirteen witnesses, ten called by TAMUC and three by Plaintiff's counsel, and considered what it characterized as "extensive" documentation provided by both parties. *Id.* at APP549, APP553.

The appeals committee issued its report to President Jones on November 23, 2010. *See* Dkt. No. 63-4. It concluded that it could not substantiate claims that Plaintiff sexually harassed two female students or humiliated one of the six students or faculty members he was alleged to have humiliated. *Id.* at APP551, APP553. It determined that the remaining alleged violations were supported by evidence and supported dismissal for cause, including violations of student rights to medical privacy and the the Health Insurance Portability and Accountability Act, improper use of Higher Education Funds, creating a hostile environment in the chemistry department, and unfair and inappropriate treatment of students. *See* Dkt. No. 63-4. The appeals committee observed that "[w]hat is remarkable, however, is that any one individual could provoke the number of complaints from students, faculty, and staff that [Plaintiff] has and nevertheless persist in the same pattern of behavior that have [sic] caused the complaint." *Id.* at APP551. By a majority vote of twelve to three, the appeals committee affirmed President Jones' decision to terminate Plaintiff's employment at TAMUC for cause. *Id.* at APP554.

TAMUC's Chancellor is the person authorized to make the final determination of dismissal of faculty members for cause. Dkt. No. 63-3 at APP372. President Jones forwarded the appeals committee's report, the appeals hearing transcript, and his notice-of-termination letter to Chancellor McKinney. After reviewing those materials, Chancellor McKinney found good cause for dismissal and terminated Plaintiff's employment effective December 8, 2010. Dkt. No. 63-4 at APP556. Chancellor McKinney did not "rubber stamp" President Jones' recommendation but instead relied

on the appeals committee's interceding independent investigation. Chancellor McKinney emphasized that the affirmance of the President's recommendation to terminate Plaintiff's employment "wasn't just from one person. It was from a committee...." Dkt. No. 63-8 at APP1013i. He also testified that, during his tenure as chancellor, Plaintiff's was the only proposed faculty termination in which the appeals committee concurred with the President's recommendation of dismissal. *Id.* at APP1013b-APP1013c.

Even if the Court were to assume that Plaintiff could demonstrate a genuine issue of material fact as to whether he engaged in protected activity, including but not limited to violations of his First Amendment rights to free speech or free association, or suffered an adverse employment action, the Court concludes that Plaintiff cannot establish that a causal link existed between the protected activity and the adverse employment action as a matter of law. *See Mato,* 267 F.3d at 450.

II.

Defendants' Motion for Summary Judgment should be granted as to Plaintiff's complaint that he was deprived of his property interests in his tenured faculty position without due process of law. The minimal due process protections to which a tenured professor is entitled before he may be dismissed include the professor's right to: (1) be advised of the cause for his termination in sufficient detail so as to show any error that may exist; (2) be advised of the names and the nature of the testimony of witnesses against him; (3) be afforded a meaningful opportunity to be heard in his own defense within a reasonable time; and (4) be afforded a hearing before a tribunal that possesses

some academic expertise and an apparent impartiality toward the charges. *Levitt v. Univ. of Tex. at El Paso*, 759 F.2d 1224, 1227-28 (5th Cir. 1985). These procedures are constitutionally required only for the termination of the Plaintiff from his tenured position. *See Davis v. Mann*, 882 F.2d 967, 973 (5th Cir. 1989); *Ashfaq v. Anderson*, 603 F. Supp. 2d 936, 942 (N.D. Tex. 2009).

The gravamen of Plaintiff's argument is that Defendants did not follow TAMUC policies and procedures, which require more process than is constitutionally mandated. A university's failure to follow its own rules in terminating a tenured professor does not in and of itself implicate constitutional due process concerns. *McIntosh v. Partidge*, 540 F.3d 315, 323-24 (5th Cir. 2008). That is because the federal courts, and not TAMUC, are responsible for establishing the contours of the Due Process Clause of the Fourteenth Amendment. *See Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 522 (10th Cir. 1998). The fundamental issue in due process law is whether state officials provided Plaintiff with the federal constitutional minimum. *McIntosh*, 540 F.3d at 324.

As discussed above, TAMUC advised Plaintiff in more than sufficient detail of the reasons for his termination and advised him of the names of potential witnesses against him and the nature of their testimony. It also gave him a meaningful opportunity to be heard in his defense, and both Plaintiff and his counsel fully participated in the appeals committee hearing.

Plaintiff nevertheless claims that he was denied an impartial tribunal because Defendants McKinney, Jones, and Lemanski were biased against him. President Jones recommended Plaintiff's dismissal and authored the notice-of-termination letter.

Provost Lemanski was called as a witness by TAMUC at the appeals committee hearing. Chancellor McKinney was the person who ultimately fired Plaintiff. Plaintiff speculates as to why Defendants McKinney, Jones, Lemanski, and others might have had reasons for antagonism toward him, but Plaintiff fails to come forward with evidence to create a genuine issue of material fact that these individuals were actually hostile, much less that they acted upon such animus in the termination proceedings. As a matter of law, Plaintiff's speculation does not show a lack of impartiality. *See Britt v. Grocers Supply Co., Inc.*, 978 F.2d 1441, 1451 (5th Cir. 1992) ("In sum, the appellants are left with nothing more than their speculation and belief that they were permanently replaced because of age. This type of evidence is insufficient to create a fact issue as to pretext.").

The Court concludes that Plaintiff was afforded procedural due process as a matter of law.

### III.

Defendants' Motion for Summary Judgment should be granted as to Plaintiff's claim that he was deprived of his liberty interest in his reputation without due process. A public employee has a constitutional right to notice and an opportunity to be heard when the employee is "'discharged in a manner that creates a false and defamatory impression about him and thus stigmatizes him and forecloses him from other employment opportunities.'" *Bellard v. Gautreaux*, 675 F.3d 454, 461 (5th Cir. 2012) (quoting *Bledsoe v. City of Horn Lake*, 449 F.3d 650, 653 (5th Cir. 2006)). The Court employs a seven-element stigma-plus-infringement test to determine whether Section

1983 affords a government employee a remedy for deprivation of liberty without notice or the opportunity for a name-clearing hearing: "The plaintiff must show: (1) he was discharged; (2) stigmatizing charges were made against him in connection with the discharge; (3) the charges were false; (4) he was not provided notice or an opportunity to be heard prior to the discharge; (5) the charges were made public; (6) he requested a hearing to clear his name; and (7) the employer denied the request." *Id.*

Here, Plaintiff does not plead that he requested a hearing to clear his name, and he has not provided summary judgment evidence to show that he made such a request. Dkt. No. 40 at 57-60. Plaintiff did reference his "liberty interests" in several email messages to Defendants Jones and Lemanski in which he sought the production of documents or raised questions about the appeals hearing procedure, but that general notation, without more, was not a request for a hearing to clear his name. Dkt. No. 63-4 at APP443-45, APP503.

IV.

Defendants' Motion for Summary Judgment should be granted as to Plaintiff's defamation claim because it is jurisdictionally barred. The Texas Tort Claims Act provides the exclusive remedy for damages allegedly caused by common-law torts such as defamation committed by a government employee in the scope of his employment. *Williams v. City of Port Arthur, Tex.*, No. 1:10-CV-823, 2012 WL 1997867, at *18-*19 (E.D. Tex. 2012)*; Franka v. Velasquez*, 332 S.W.3d 367, 369 (Tex. 2011); TEX. CIV. PRAC. & REM. CODE § 101.106(a). The Texas Tort Claims Act further provides that, "[if] suit is filed against an employee of a governmental unit based on conduct within the

general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only" and shall be dismissed. TEX. CIV. PRAC. & REM. CODE § 101.106(f); *Franka,* 332 S.W.3d at 385. In *Franka*, the Texas Supreme Court held that a state common law tort claim against a state employee must be dismissed under the Act, even if the tort claim is not among those for which immunity has been waived. *Franka*, 332 S.W.3d at 385.

Plaintiff has not responded at all to this jurisdictional bar raised by Defendants in their summary judgment papers. *See* Dkt. No. 62 at 35-36; Dkt. No. 82 at 32-33. And Plaintiff fails to show by competent summary judgment evidence that the conduct upon which he bases his defamation claim against Defendants Jones, Lemanski, Evans, and Jang occurred outside the scope of their faculty or administrative duties. Plaintiff therefore does not rebut Defendants' argument that his defamation claim is jurisdictionally barred.

V.

Because Defendants' Motion for Summary Judgment should be granted on the grounds discussed above, the Court need not reach the individual defendants' immunity defenses. *See* Dkt. No. 62 at 41-48.

VI.

Because Defendants' Motion for Summary Judgment should be granted, and judgment entered in Defendants' favor on all of Plaintiff's claims, Plaintiff's Motion for Partial Summary Judgment [Dkt. No. 56], which asserts only that he is entitled to a

jury trial, should be denied as moot.

## Recommendation

Defendants' Motion for Summary Judgment [Dkt. No. 61] should be granted, Plaintiff's Motion for Partial Summary Judgment [Dkt. No. 56] should be denied, and judgment should be entered in Defendants' favor on all of Plaintiff's claims.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: February 1, 2013

                                              _____
                                              DAVID L. HORAN
                                              UNITED STATES MAGISTRATE JUDGE