IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NENAD M. KOSTIĆ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:10-cv-2265-M |
| | § | |
| TEXAS A&M UNIVERSITY AT COMMERCE, ET AL., | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the undersigned magistrate judge for determination of Plaintiff Nenad M. Kostić's Renewed Motion to Compel Discovery ("Renewed Motion") [Dkt. No. 107] pursuant to 28 U.S.C. § 636(b) and an order of reference from the District Court. *See* Dkt. No. 109. Plaintiff's Renewed Motion seeks an order compelling production of documents that Plaintiff has requested from Defendants. *See* Dkt. No. 74. Pursuant to the Court's order [Dkt. No. 110], on April 22, 2013, the parties filed a Joint Status Report on Plaintiff's Renewed Motion to Compel Discovery ("Joint Status Report") [Dkt. No. 111] stating that they were not able to reach an agreement on the issues presented in the Renewed Motion and summarizing the parties' arguments.

Embedded within the Joint Status Report are Plaintiff's allegations that Defendants spoliated evidence. *See* Dkt. No. 111 at 5-6. Plaintiff, however, never clearly makes any specific request for relief based on these allegations of spoliation, in

either the Renewed Motion (or, for that matter, the original motion to compel, *see* Dkt. Nos. 74 & 94) or the Joint Status Report, nor has Plaintiff made any request for a hearing or further opportunity to develop his spoliation allegations. In fact, as Defendants point out, *see* Dkt. No. 111 at 16, Plaintiff's spoliation allegations in the Joint Status Report are not contained in either Plaintiff's Renewed Motion or the original motion to compel that Plaintiff asserts he is renewing. *See* Dkt. Nos. 74, 94, & 107. There may be a ready explanation for the omissions: Requests to compel production of sought-after documents do not fit naturally with allegations that documents that a party seeks have already been destroyed. In Plaintiff's response to Defendants' original motion for summary judgment, however, Plaintiff did assert that "Defendants spoliated evidence in this case" and that the allegedly "destroyed notes and related documents must create an adverse inference supporting Kostić's claim." Dkt. No. 81 at 52.

Despite the ambiguity in what Plaintiff seeks, the undersigned has reviewed Plaintiff's allegations of spoliation and will making the following findings, conclusions, and recommendation as to those allegations, which, as Defendants also assume, *see* Dkt. No. 111 at 16-18, are apparently in support of a request for an adverse inference. Having considered the Plaintiff's allegations in the Joint Status Report, other related documents, and applicable law, the undersigned recommends that Plaintiff's request for an adverse inference based on alleged spoliation should be denied.

## Legal Standards and Analysis

Plaintiff contends Defendants spoiled critical evidence in this case and that,

2

consequently, he is entitled to a spoliation inference. *See* Dkt. No. 81 at 52; Dkt. No. 111 at 5-6. "Under the spoliation doctrine, a jury may draw an adverse inference 'that a party who intentionally destroys important evidence in bad faith did so because the contents of those documents were unfavorable to that party.'" *Whitt v. Stephens County*, 529 F.3d 278, 284 (5th Cir. 2008) (quoting *Russell v. Univ. of Tex.*, 234 F. App'x 195, 207 (5th Cir. 2007)). "The Fifth Circuit permits an adverse inference against the destroyer of evidence only upon a showing of 'bad faith' or 'bad conduct.'" *Condrey v. SunTrust Bank of Ga.*, 431 F.3d 191, 203 (5th Cir. 2005). One district court has explained that, to obtain sanctions for spoliation of evidence, a party must establish "(1) the party with control over the evidence had an obligation to preserve it at the time it was destroyed; (2) the evidence was destroyed with a culpable state of mind; and (3) the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Rimkus Consulting Group, Inc. v. Cammarata*, 688 F.Supp.2d 598, 615-16 (S.D. Tex. 2010).

"[M]ere negligence is not enough" to warrant an instruction on spoliation. *Vick v. Tex. Employment Comm'n*, 514 F.2d 734, 737 (5th Cir. 1975). Further, courts typically "do not draw an inference of bad faith when documents are destroyed under a routine policy." *Russell v. Univ. of Tex. of Permian Basin*, 234 F. App'x 195, 208 (5th Cir. 2007) (citing *Vick*, 514 F.2d at 737; *Coates v. Johnson & Johnson*, 756 F.2d 524, 551 (7th Cir. 1985)); *accord United States v. Ochoa*, 88 F. App'x 40, 42 (5th Cir. 2004) ("Finally, Ochoa has not shown that the district court erred in denying her request that

3

the jury be instructed on spoliation of evidence. The record reflects that the Government did not act in bad faith when it disposed of the crankshaft. Rather, this disposal was done pursuant to a routine policy." (citation omitted)); *King v. Illinois Cent. R.R.*, 337 F.3d 550, 556 (5th Cir. 2003) (explaining that disposing of documents for innocuous reasons, such as destruction "as a part of routine file maintenance" demonstrates that the accused party "lacked a 'bad faith' motive for their destruction"). And another court has recently noted that, while the court "fully appreciates the importance of a party ensuring that evidence is preserved once the party becomes aware of a claim, and the significance of 'litigation holds' in this regard, nevertheless, "failure to send a written 'litigation hold' memo is largely irrelevant in the actual spoliation analysis, because – litigation hold or not – to show spoliation one must still demonstrate the loss or destruction of evidence," and, "[a]t most, the lack of a hold would be relevant to the state of mind issue." *Davis S R Aviation, LLC v. Rolls-Royce Deutschland Ltd. & Co. KG*, No. A-10-CV-367 LY, 2012 WL 175966, at *3 n.3 (W.D. Tex. Jan. 20, 2012).

Plaintiff claims that Defendants shredded documents and deleted emails that would be responsive to his requests for production of documents. *See* Dkt. No. 111 at 5-6; Dkt. No. 81 at 52. He alleges that Defendants had a duty to retain documents in anticipation of litigation from the time they learned of his EEOC/TWC filing in late February 2010. *See id.*

Plaintiff points to the testimony of Michelle Vieira, the Equal Opportunity

4

Specialist and Title IX Coordinator for Texas A&M University at Commerce, that it is her regular practice to shred notes, that she shredded notes concerning the break-in in her office where documents responsive to Plaintiff's requests for production were stored because she was not instructed to keep them, and that she may have shredded documents concerning Plaintiff before she was instructed in writing to keep such documents. *See* Dkt. No. 112 at 9-11. Vieira's testimony – that she shreds "a lot of notes" and may have shredded notes "related to" Plaintiff before she was instructed in writing to keep them – falls well short of the showing of bad faith, no less so where this activity apparently occurred pursuant to routine file maintenance. *See id.*

Plaintiff also points to evidence that the Myers committee members shredded documents concerning Plaintiff's termination appeal. *See* Dkt. No. 111 at 5; Dkt. No. 81 at 52. Defendants addressed that charge in their summary judgment reply: "Myers explained that he told the members that if they did not feel confident they could maintain the confidentiality of their copies of the hearing exhibits – of which [Plaintiff] had a complete set – they should destroy them, which most chose to do. They were under no legal obligation to retain transitory materials such as notes that individual members may have made on their copies.... And the plaintiff has presented no evidence that any committee member was aware that [Plaintiff] had filed suit the day before the hearing." Dkt. No. 96 at 8. Here, too, Plaintiff's evidence falls well short of the required showing of bad faith – even assuming there may have been actual destruction of documents that Plaintiff does not otherwise have in his possession – for any adverse inference from alleged spoliation. Again, Defendants have pointed to evidence of

5

document destruction in compliance with a university policy, *see* Dkt. No. 88 at 6; Dkt. No. 111 at 16-17, while Plaintiff offers no evidence to suggest any bad faith motive on the part of Defendants or members of the Myers committee in destroying their notes.

Plaintiff also complains about TAMUC's recent policy change concerning the destruction of emails. Prior to August 2012, it was TAMUC policy to never delete emails. Afterward, under the new policy emails are destroyed after 120 days. *See* Dkt. No. 111 at 5-6. Plaintiff finds the timing of the new policy suspicious because it was announced shortly after his counsel deposed President and Chief Executive Officer Dan Jones, and Plaintiff is bothered by Dr. Jones's statements regarding the need to comply with the new policy. *See id.* However, the record contains an email exchange containing statements by Defendants' counsel suggesting that the new policy is "in line" with that of most public agencies and universities and in compliance with Texas state law and that Defendants had already placed a litigation hold on discoverable materials, including emails. *See* Dkt. No. 112 at 1. In the face of this, Plaintiff offers no evidence to suggest that the new policy was implemented in bad faith – after it was announced in publicly available speeches – or that it has resulted in the destruction of any emails responsive to Plaintiff's discovery requests. Plaintiff even acknowledges that "Defendants' counsel claimed that all emails relevant to the case were under litigation hold, protected from wholesale destruction." Dkt. No. 111 at 8.

Plaintiff instead points to Dr. Jones's public statement to TAMUC employees that "I've been sued enough" while urging employees not to save emails on their own computers because "all that stuff is discoverable." *See* Dkt. No. 111 at 6 & nn.1-2. But

6

a review of those public statements – through the links to videos on TAMUC's website to which Plaintiff has cited, *see id.* – demonstrates that Dr. Jones was not publicly advising employees to remove emails, following the period for keeping records set by state policy, because the emails' contents might be unfavorable but rather because, when discovery ensues through litigation, it can be quite burdensome to sift through emails that, per the example that Dr. Jones used in his remarks, often consist of nothing more than inviting a colleague to lunch. Even if any inference could be drawn that Dr. Jones has not enjoyed his experience in responding to discovery requests in litigation, his statements do not support a finding of bad faith to justify an adverse inference for spoliation.

A party's burden in seeking an adverse inference based on alleged spoliation is heavy, and here Plaintiff has not even clearly requested such an inference and, in any event, has not met his burden on this record to obtain an adverse inference. The undersigned finds that Plaintiff has failed to show Defendants were engaging in bad conduct or acting in bad faith when they allegedly destroyed any documents about which Plaintiff has raised spoliation allegations.

### Recommendation

The undersigned recommends that Plaintiff's request for an adverse inference based on alleged spoliation should be denied.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within

7

14 days after being served with a copy. See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: June 12, 2013

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE