IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

NENAD M. KOSTIĆ,                        §
                                        §
          Plaintiff,                    §
                                        §
V.                                      §          No. 3:10-cv-2265-M
                                        §
TEXAS A&M UNIVERSITY                    §
AT COMMERCE, ET AL.,                    §
                                        §
          Defendants.                   §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE**
**UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the United States magistrate judge for recommendation on Defendants' Second (Renewed) Motion for Summary Judgment [Dkt. No. 108] and Defendants' Motion to Strike New Allegations and Evidence in Plaintiff's Response to the Renewed Motion for Summary Judgment [Dkt. No. 129] pursuant to 28 U.S.C. § 636(b) and orders of reference. *See* Dkt. Nos. 109 & 130. The undersigned issues the following findings of fact, conclusions of law, and recommendation.

## Background

Plaintiff Nenad Kostić is a former tenured professor and former head of the chemistry department at Texas A&M University at Commerce ("TAMUC") who was terminated for cause. He sues his former employer, TAMUC, and five TAMUC officials and professors: Michael D. McKinney, former Chancellor; Dan R. Jones, President and Chief Executive Officer; Larry F. Lemanski, Provost and Vice President for Academic

Affairs; Christine Evans, former Dean of the College of Arts and Sciences and current Professor of Agricultural Sciences; and Ben W.L. Jang, Head of the Chemistry Department and a Professor of Chemistry (the "Individual Defendants"). *See* Dkt. No. 40.

In his Second Amended Complaint, Plaintiff asserts a retaliation claim against TAMUC under Title VII, *see id.* at 4-24, and against the Individual Defendants under 42 U.S.C. § 1983, *see id.* at 24-35. He also asserts a defamation claim against Defendants Jones, Lemanski, Evans, and Jang. Dkt. *See id.* at 60-63. In addition, he asserts claims for violations of his constitutional rights of free speech and free association and deprivation of his liberty interest in his reputation and his property interest in continued employment and tenure without due process of law. *See id.* at 24-60.

Plaintiff and Defendants filed motions for summary judgment, *see* Dkt. Nos. 56 & 61, which were referred to the undersigned for recommendation. *See* Dkt. No. 98. The undersigned recommended that Plaintiff's Motion for Summary Judgment be denied and that Defendants' Motion for Summary Judgment be granted. *See* Dkt. No. 100. Because the undersigned concluded that Defendants' Motion for Summary Judgment should be granted on other grounds, the undersigned's Findings, Conclusions, and Recommendation did not address the Individual Defendants' arguments based on their defenses of qualified and official immunity. *See id.* at 13.

District Judge Barbara M.G. Lynn accepted in part and rejected in part the Findings, Conclusions, and Recommendation. *See* Dkt. No. 105. Judge Lynn accepted

the Findings, Conclusions, and Recommendations as to all claims but retaliation and defamation as to Defendant Jang only and denied Defendants' Motion for Summary Judgment on Plaintiff's claims of retaliation against all Defendants and defamation against Defendant Jang. *See id.*

Thereafter, Judge Lynn ordered that Defendants could file a second motion for summary judgment on the remaining claims based on the defenses of qualified and official immunity. *See* Dkt. No. 106. Defendants filed their Second (Renewed) Motion for Summary Judgment [Dkt. No. 108], in which they not only renew their motion for summary judgment based on the defenses of qualified and official immunity, *see* Dkt. No. 108 at 8, 10-12, but also seek reconsideration of the denial of summary judgment on the remaining retaliation and defamation claims on both grounds not previously addressed and those expressly rejected in the court's prior decision, *see id.* at 8, 14-20. The Second (Renewed) Motion for Summary Judgment also incorporates by reference several previously-filed motions and responses. *See* Dkt. No. 108.

Judge Lynn referred the Second (Renewed) Motion for Summary Judgment to the undersigned for recommendation. *See* Dkt. No. 109. Defendants subsequently filed a Motion to Strike New Allegations and Evidence in Plaintiff's Response to the Renewed Motion for Summary Judgment [Dkt. No. 129], which Judge Lynn also referred to the undersigned for determination or recommendation. *See* Dkt. No. 130.

## Legal Standards for Summary Judgment

Under Fed. R. Civ. P. 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual "issue is material if its resolution could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003). "A factual dispute is 'genuine,' if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997).

If the moving party seeks summary judgment as to his opponent's claims or defenses, "[t]he moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998). "Once the moving party meets this burden, the nonmoving party must set forth" – and submit evidence of – "specific facts showing a genuine issue for trial and not rest upon the allegations or denials contained in its pleadings." *Id.*; *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc).

The Court is required to view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party and resolve all disputed factual controversies in favor of the nonmoving party – but only if both parties have introduced evidence showing that an actual controversy exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540

-4-

(5th Cir. 2005); *Lynch Props.*, 140 F.3d at 625. "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston,* 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden, *Little*, 37 F.3d at 1075. Rather, the non-moving party must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). If, "after the nonmovant has been given an opportunity to raise a genuine factual issue," "the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial." *DIRECTV, Inc. v. Minor*, 420 F.3d 546, 549 (5th Cir. 2005); *Steadman v. Texas Rangers*, 179 F.3d 360, 366 (5th Cir. 1999). The Court will not assume "in the absence of any proof ... that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment," and "[a] failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (internal quotation marks omitted).

## Analysis

### I.     Waiver of Defendants' Immunity Defenses

"Qualified or 'good faith' immunity is an affirmative defense that must be pleaded by a defendant official." *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982). Likewise, Texas state law "[o]fficial immunity is an affirmative defense that protects government employees from personal liability for certain actions taken in the course of their employment." *Ramirez v. Martinez*, 716 F.3d 369, 379 (5th Cir. 2013). This defense is also an affirmative defense that must be pleaded by a defendant. *See Kinnison v. City of San Antonio*, Civ. A. No. SA-08-CA-421-XR, 2009 WL 578525, at *4 (W.D. Tex. Mar. 5, 2009); *accord Bisong v. Univ. of Houston*, 493 F. Supp. 2d 896, 915 (S.D. Tex. 2007). The Individual Defendants did not plead the affirmative defenses of official and qualified immunity in their most recently filed answer, although they did plead these defenses in their original and first amended answers; Defendants instead assert these defenses in their motions for summary judgment. *See* Dkt. No. 5 (Original Answer); Dkt. No. 29 (First Amended Answer); Dkt. No. 46 (Answer to Second Amended Complaint); Dkt. No. 61 (original motion for summary judgment); Dkt. No. 108 (renewed motion for summary judgment).

Plaintiff argues that these affirmative defenses therefore are not properly before the Court because the Individual Defendants did not properly plead them. *See* Dkt. No. 82 at 33; Dkt. No. 127 at 12-14. In response, the Individual Defendants assert that Plaintiff pleaded the elements of qualified immunity in his Second Amended Complaint and asserted that the Individual Defendants could not satisfy them; therefore, the

Individual Defendants claim that their denials (in their answer) of these allegations were sufficient to raise the immunity defenses. *See* Dkt. No. 96 at 24 (reply to original motion, referring to Dkt. No. 40 at ¶¶ 200, 270, 272, 288); Dkt. No. 132 at 17 (incorporating prior arguments by reference).

"An affirmative defense may be raised on a motion for summary judgment only if that motion is the first pleading responsive to the substance of the allegations." *United States v. Burzynski Cancer Research Inst.*, 819 F.2d 1301, 1307 (5th Cir. 1987). That is not the case here, where Defendants' answer was the first pleading responsive to the substance of the allegations. *See* Dkt. No. 46.

This raises two issues. First, did Defendants sufficiently plead an immunity defense in their answer, as they assert? And, second, even if they did not, should their failure to assert an affirmative defense in a responsive pleading result in waiver? *See generally Giles v. Gen. Elec. Co.*, 245 F.3d 474, 491-92 (5th Cir. 2001).

Turning first to qualified immunity, as to the first issue, Plaintiff's complaint does include allegations negating the substance of a qualified immunity defense, *see* Dkt. No. 40 at ¶¶ 200, 270, 272, 288, and Defendants did deny those allegations in their answer, *see* Dkt. No. 46 at ¶¶ 200, 270, 272, 288. But the anticipation of a qualified immunity defense did not relieve Defendants of the burden to affirmatively plead qualified immunity <u>as a defense</u>. The Supreme Court in *Gomez v. Toledo*, 446 U.S. 635 (1980), held that a defendant official has the burden of affirmatively pleading the qualified immunity defense and that the plaintiff does not have the burden of anticipating the defense and countering it. *See id.* at 640-41 ("Since qualified immunity

-7-

is a defense, the burden of pleading it rests with the defendant. It is for the official to claim that his conduct was justified by an objectively reasonable belief that it was lawful. We see no basis for imposing on the plaintiff an obligation to anticipate such a defense by stating in his complaint that the defendant acted in bad faith. Our conclusion as to the allocation of the burden of pleading is supported by the nature of the qualified immunity defense. As our decisions make clear, whether such immunity has been established depends on facts peculiarly within the knowledge and control of the defendant." (citations omitted)). The same is true of the state law official immunity defense. *See Kinnison*, 2009 WL 578525, at *4.

Turning then to the second issue, the undersigned concludes that Defendants did not waive these defenses by failing to affirmatively plead them in their second amended answer. Although, "[a]s an affirmative defense, qualified immunity must be pled and proved by the defendant," and, "[g]enerally, under Rule 8(c) affirmative defenses must be raised in the first responsive pleading," "[w]here the matter is raised in the trial court in a manner that does not result in unfair surprise ... technical failure to comply precisely with Rule 8(c) is not fatal." *Pasco ex rel. Pasco v. Knoblauch*, 566 F.3d 572, 577 (5th Cir. 2009) (internal quotation marks omitted). "An affirmative defense is not waived if the defendant raised the issue at a pragmatically sufficient time, and [the plaintiff] was not prejudiced in its ability to respond." *Id.* (internal quotation marks omitted); *accord Arismendez v. Nightingale Home Health Care, Inc.*, 493 F.3d 602, 610 (5th Cir. 2007).

Simply denying Plaintiff's allegations – however directed to the substance of an

immunity defense they may have been – does not satisfy Defendants' pleading burden under Rule 8(c). However, the practical reality is that the Individual Defendants raised the issue at a pragmatically sufficient time and Plaintiff could not have been prejudiced in his ability to respond. Plaintiff himself pleaded the opposite of the elements of the qualified immunity defense and the Individual Defendants, predictably, denied those allegations. "Qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Winston v. City of Shreveport*, 390 F. App'x 379, 383 (5th Cir. 2010) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). Having forced each Defendant to deny that he or she violated another persons's clearly established constitutional rights or did not act objectively reasonably, Plaintiff effectively put himself on notice that Defendants would allege this defense to liability. This conclusion is further supported by the fact that Plaintiff had no need to plead allegations negating the elements of either qualified or official immunity because avoiding such immunity is not an element of a claim. *See Schultea v. Wood*, 47 F.3d 1427, 1434 (5th Cir. 1995) ("Nor will it do to insist that avoiding qualified immunity is an element of a claim. As *Siegert* made plain, *Gomez* is alive and well."); *accord Crawford-El v. Britton*, 523 U.S. 574, 596 (1998) (noting that the Supreme Court has "refused to change the Federal Rules governing pleading by requiring the plaintiff to anticipate the immunity defense"); *Gomez*, 446 U.S. at 640 ("Moreover, this Court has never indicated that qualified immunity is relevant to the existence of the plaintiffs' cause of action; instead we have described it

as a defense available to the official in question.").

Further, while Plaintiff may not have pleaded the opposite of the elements of the state law official immunity defense in his second amended complaint, Defendants raised this defense in their two earlier answers, and the undersigned finds that Defendant raised the issue at a pragmatically sufficient time and that Plaintiff has not shown that he was prejudiced in his ability to respond.

Accordingly, the undersigned concludes that the Individual Defendants did not waive and may press their immunity defenses. *See Johnson v. Johnson*, 385 F.3d 503, 516 n.7 (5th Cir. 2004).

## II.   Motion to Strike

In his response to the renewed summary judgment motion, Plaintiff includes a section entitled "Additional Materially Adverse Actions" in which he discusses evidence that he did not submit or discuss in the original summary judgment filings. *See* Dkt. No. 127 at 8-11; *see also id*. at 41. Plaintiff also filed a 430-page appendix in support of his response to the renewed motion in which he submits additional documents, interrogatory answers, and deposition excerpts. *See* Dkt. No. 128. Defendants have filed a Motion to Strike New Allegations and Evidence in Plaintiff's Response to the Renewed Motion for Summary Judgment. *See* Dkt. No. 129. That motion's gravamen is that Defendants argue the Individual Defendants did not file a new motion but instead only renewed their original motion and, therefore, Plaintiff should be limited to the evidence that he submitted in response to the original motion. *See id*. In their reply to Plaintiff's response to the motion to strike [Dkt. No. 133], Defendants explain

that they filed the motion to strike as "a matter of principle" because they contend that Plaintiff subjected them to "months of excessive discovery demands." Dkt. No. 140 at 1.

As discussed herein, the Individual Defendants went much further than simply renewing their original motion for summary judgment. *See* Section V. And Judge Lynn's order authorizing the Individual Defendants to file a second motion for summary judgment did not impose any limitations on Plaintiff's response thereto. *See* Dkt. No. 106. Nor does Rule 56 limit the arguments or evidence that a nonmovant may raise or submit in response to a motion for summary judgment. *See* FED. R. CIV. P. 56. "Just as at trial a litigant exercises a full and free choice as to what evidence to put before the factfinder, so in response to a Rule 56 motion for summary judgment the litigant exercises a full and free choice as to what evidence to put before the judge. No limitations except for the normal limits on evidence – relevance, materiality and admissibility generally – are placed on the litigants' choice of what to submit either at trial or on a summary judgment motion (in the latter case, either on the part of the motion's proponent or on the part of its opponent)." *Conway Corp. v. Ahlemeyer*, 754 F. Supp. 604, 605 (N.D. Ill. 1991).

The Individual Defendants filed a second motion for summary judgment, and Plaintiff could respond to that motion with new arguments and evidence if he chose to do so. Moreover, filing a motion to strike out of apparent spite over discovery disputes is not an appropriate reason to limit Plaintiff's response to the renewed summary judgment motion. Accordingly, the undersigned concludes that Defendant's Motion to

Strike New Allegations and Evidence in Plaintiff's Response to the Renewed Motion for Summary Judgment [Dkt. No. 129] should be denied.

## III.   Qualified Immunity

"Qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Winston*, 390 F. App'x at 383 (quoting *Pearson*, 555 U.S. at 231); *see also Harlow*, 457 U.S. at 818. A plaintiff must satisfy a two-prong test in order to overcome a qualified immunity defense. First, the plaintiff must show "that the official violated a statutory or constitutional right." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011). Put another way, the question is "whether the plaintiff has alleged a violation of a constitutional right." *Charles v. Grief*, 522 F.3d 508, 511 (5th Cir. 2008). Second, he must show that "the right was 'clearly established' at the time of the challenged conduct." *al-Kidd*, 131 S. Ct. at 2080 (quoting *Harlow*, 457 U.S. at 818). Even if the government official's conduct violates a clearly established right, the official is entitled to immunity if his conduct was objectively reasonable. *See Davis v. McKinney*, 518 F.3d 304, 317 (5th Cir. 2008). Taken together, the second step in the analysis requires the Court to determine "whether the defendant's conduct was objectively reasonable in light of the clearly established law at the time of the incident." *Charles*, 522 F.3d at 511.

In both their original and renewed summary judgment motions, the Individual Defendants assert that they are entitled to qualified immunity from Plaintiff's Section 1983 retaliation claims against them because their actions were objectively reasonable.

*See* Dkt. No. 61 at 57; Dkt. No. 62 at 55; Dkt. No. 108 at 3-5. In their renewed motion, the Individual Defendants assert that "reasonable university administrators in their position could have believed that *some* of Plaintiff's activity at issue was unprotected because it was undertaken in his capacity as head of the Chemistry department or as a member of the faculty and/or that these and other statements were predominately more of interest to [Plaintiff] as a member of the Chemistry faculty than to the public at large; that [Plaintiff's] almost non-stop series of denunciations over a three and a half year period, accompanied by constant accusations of defamation, retaliation, and violation of due process, along with repeated threats of litigation, were unreasonably disruptive in the small Chemistry department." Dkt. No. 108 at 11-12 (emphasis added).

The undersigned discussed the summary judgment evidence concerning retaliation previously submitted to support the original motion in the undersigned's prior Findings, Conclusions, and Recommendation. *See* Dkt. No. 100 at 4-9. Plaintiff's response to the renewed motion focuses more on alleged acts of retaliation than it does on whether the Individual Defendants enjoy qualified immunity. *See* Dkt. No. 127.

Once a defendant invokes his entitlement to qualified immunity, "the burden is on the plaintiff to demonstrate the inapplicability of the defense." *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002). This burden applies both at trial and on summary judgment. *See id.*; *see also Bazan ex rel. Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489 (5th Cir. 2001). The plaintiff must rebut the defense by establishing that the allegedly wrongful conduct violated clearly established law. *See Michalik v. Hermann*,

422 F.3d 252, 262 (5th Cir. 2005). To overcome the defense of qualified immunity at the summary judgment stage, the plaintiff cannot rest on conclusory allegations or assertions but must demonstrate genuine issues of material fact regarding the reasonableness of the defendant's conduct. *See id.*

The qualified immunity defense is appropriately resolved at the summary judgment stage when (1) a plaintiff has established that the defendant has engaged in the complained-of conduct or (2) the court "skip[s], for the moment, over ... still-contested matters to consider an issue that would moot their effect if proved." *Harlow*, 457 U.S. at 818; *see also Haverda v. Hays Cnty.*, 723 F.3d 586, 599 (5th Cir. 2013). "'If resolution of [qualified immunity] in the summary judgment proceedings turns on what the defendant actually did, rather than on whether the defendant is immunized from liability ..., and if there are conflicting versions of his conduct, one of which would establish and the other defeat liability, then the case is inappropriate for summary judgment.'" *Haverda*, 723 F.3d at 599 (quoting *Barker v. Norman*, 651 F.2d 1107, 1123-24 (5th Cir. Unit A July 1981)). Although summary judgment may be appropriate based on a plaintiff's inability to prove the facts essential to recovery, this "has nothing to do with the qualified immunity defense." *Id.*

A.     <u>Has Plaintiff alleged a violation of a constitutional right?</u>

Turning to the first part of the qualified immunity test, Plaintiff argues that the Individual Defendants retaliated against him for engaging in protected speech in violation of his First Amendment rights. To prove a claim of First Amendment retaliation, a plaintiff must establish that (1) he was not speaking pursuant to his

-14-

official job duties; (2) he was speaking as a citizen on a matter of public concern; (3) his interest in speaking outweighed his employer's interest in promoting workplace efficiency; (4) he suffered an adverse employment action; and (5) the adverse action was substantially motivated by the protected speech. *See Javiar v. Aguilar*, 666 F.3d 325, 332 (5th Cir. 2011); *Petrie v. City of Grapevine*, 904 F. Supp. 2d 569, 576 (N.D. Tex. 2012), *aff'd*, No. 12-11171, 2013 WL 5835612 (5th Cir. Oct. 31, 2013). While the first three of these elements present questions of law for the Court to decide, the latter two are factual disputes typically decided by a jury. *See id.*

For the reasons explained more fully below, consideration of the fourth and fifth elements is not appropriate in this context as to the Individual Defendants' qualified immunity defenses. Resolving those aspects of the first step of the qualified immunity analysis – whether Plaintiff has alleged a violation of his First Amendment rights or, more specifically, whether Plaintiff suffered an adverse employment action that was substantially motivated by the protected speech – turns on what the Individual Defendants actually did, rather than on whether they are immunized from liability and there are conflicting versions of the Individual Defendants' conduct, one of which would establish and the other defeat liability. As such, in addressing the first step of the analysis of the Individual Defendants' qualified immunity defense, consideration of the adverse employment action and causation elements are inappropriate for summary judgment, because, even if Plaintiff cannot establish a genuine issue of material fact as to these elements, this "has nothing to do with the qualified immunity defense." *Haverda*, 723 F.3d at 599.

The Court should, however, resolve on summary judgment whether, as a matter of law, Plaintiff's Section 1983 retaliation claim alleges a violation of his First Amendment rights based on the first three elements of such a claim laid out above, or, put another way, whether Plaintiff's speech was protected under the First Amendment. *See Petrie*, 2013 WL 5835612, at *1-*2. And it is to that analysis that the undersigned turns.

1.      *The speech at issue*

Viewing the evidence in the light most favorable to Plaintiff, the speech that Plaintiff alleges was protected by the First Amendment included statements "criticiz[ing] TAMUC for wasting public funds on scholarships for hundreds of undeserving persons who were students in name only"; statements both within TAMUC and to the news media about alleged hazardous practices and an alleged cover-up after a fire in the laboratory of "Jang's protégé" Bukuo Ni; complaints about Jang's alleged nepotism; and reporting alleged discrepancies in Lemanski's TAMUC job application to McKinney. Plaintiff also alleges that the Individual Defendants retaliated against him for speaking out against the alleged establishment of religion at TAMUC, including Jang's alleged proselytization, religious discrimination in the Chemistry Department, religious influence in the TAMUC curriculum, and public religious ceremonies at TAMUC conducted by top TAMUC officials. *See* Dkt. No. 127 at 11-14, 17, 25.

Plaintiff was employed by TAMUC as a tenured professor and Head of its Chemistry Department in June 2006. In March 2007, Plaintiff told his departmental

-16-

colleagues at a faculty dinner that TAMUC was running a welfare system by wasting public funds on scholarships for academically inferior students. On April 11, 2007, other members of the Chemistry Department faculty and staff submitted a grievance against Plaintiff. Defendant Jang took the lead in preparing the grievance. After an investigation of the complaint, Plaintiff was asked, and agreed, to resign as department head on May 2, 2007.

On January 9, 2009, Chunki Shi, a former postdoctoral assistant in Jang's research group, filed a complaint against Jang. Plaintiff assisted Shi in drafting the complaint alleging academic dishonesty and religious coercion. The religious coercion complaint was based on allegations that Jang had pressured Shi and his wife to participate in religious activities.

Also on January 9, 2009, Plaintiff filed his own complaint against Jang and in support of Shi. In his complaint, Plaintiff accused Jang of nepotism for hiring and supervising his daughter as a reseacher in Jang's own laboratory, accused Jang of religious proselytization, and stated Plaintiff's concern about "[t]oleration or encouragement by TAMUC administration of widespread religious proselytization within the university." Plaintiff also complained that he "had to attend large, important public meetings with alumni and students on campus, in which top university officials said long prayers and invocations...."

Sometime in the spring of 2009, Plaintiff protested to family, friends, and some faculty members about participation in public religious ceremonies by top TAMUC officials. On April 16, 2009, Plaintiff filed a complaint with President Jones in which

he included complaints about Jang's proselytization of foreign students.

Plaintiff was suspended with pay in February 2010 pending a committee investigation of student complaints against him.

On March 15, 2010, while the committee investigation was in progress, a fire occurred in the laboratory of the Chemistry Building assigned to Jang's protégé, Bukuo Ni. In early April, 2010, TAMUC administration instructed faculty and students not to talk to the media about the fire. Plaintiff defied the gag order and made public statements to the media, as well as to TAMUC administration, accusing the university of indifference to safety, hazardous practices, and a cover-up.

On April 22, 2010, the committee investigating Plaintiff recommended his immediate termination, and President Jones sent Plaintiff a notice of dismissal on June 17, 2010.

On October 4, 2010, Plaintiff submitted a complaint to Chancellor McKinney in which he alleged that Defendant Lemanski's posted curriculum vitae included inaccurate information. After an investigation, Lemanski corrected it.

Chancellor McKinney terminated Plaintiff on December 8, 2010.

2.    *Whether the speech was made pursuant to Plaintiff's official job duties*

If made "pursuant to official duties," speech is not constitutionally protected, no matter how great its social significance. *Williams v. Dallas Indep. Sch. Dist.*, 480 F.3d 689, 692-93 (5th Cir. 2007); *see also Garcetti v. Ceballos*, 547 U.S. 410, 424 (2006) ("[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the

Constitution does not insulate their communications from employer discipline."). "While the court must consider factual circumstances to determine whether speech is official, the determination is still a question of law." *Gibson v. Kilpatrick*, 734 F.3d 395, 400 (5th Cir. 2013); *see also Charles*, 522 F.3d at 512 ("Whether [the plaintiff] engaged in protected speech is a purely legal question...").

The United States Court of Appeals for the Fifth Circuit has defined "pursuant to official duties" as "activities undertaken in the course of performing one's job." *Davis*, 518 F.3d at 313. The speech need not be "required" by the plaintiff's job duties to fall within these parameters; rather, it is enough that the speech be "closely related" to the duties. *Id.* at 312 (citing *Williams*, 480 F.3d at 692). The inquiry "is a practical one," *Garcetti*, 547 U.S. at 424, during which courts have considered such nondispositive factors as the employee's job description, whether the employee spoke on the subject matter of his employment, and whether the speech stemmed from special knowledge gained as an employee, *see Williams*, 480 F.3d at 692; *Charles*, 522 F.3d at 513. Whether a communication is internal or external in nature may also be significant: where "a public employee raises complaints or concerns up the chain of command at his workplace about his job duties," the speech is made pursuant to his official duties, but, when an employee "take[s] his job concerns to persons outside the work place in addition to raising them up the chain of command at his workplace," these external communications are typically made as a citizen, not an employee." *Davis*, 518 F.3d at 313 (citing cases); *see also Charles*, 522 F.3d at 514.

Plaintiff's statements criticizing TAMUC for giving scholarships to students

whom he characterized as undeserving were made at a dinner with faculty colleagues and stemmed from special knowledge that he acquired as part of his official job duties as a professor. Additionally, Plaintiff's statements concerning Jang's alleged nepotism in the Chemistry Department in which both men worked and his accusations concerning alleged discrepancies in Lemanski's TAMUC job application are also based on special knowledge that he gained as an employee, and those complaints were made to persons in the chain of command, suggesting that the statements were made pursuant to Plaintiff's official job duties. Therefore, the undersigned concludes that Plaintiff's speech concerning the use of public funds for improper scholarships, nepotism in the Chemistry Department, and his charges about false statements in Lemanski's job application or curriculum vitae are not protected speech.

Plaintiff's statements concerning the laboratory fire, including his safety concerns and allegations of a cover-up, were made to the media, and, while they may have been based, at least in part, on knowledge that Plaintiff acquired as an employee, these statements were not made pursuant to his official job duties and were made in defiance of his superiors' instructions not to talk to the media. And, while some of Plaintiff's religion-based statements, such as his charges of religious discrimination and proselytization within the Chemistry Department, were arguably closely tied to his job duties, others, such as accusations of system-wide establishment of religion, were not. Nevertheless, the undersigned concludes that Plaintiff's speech concerning Jang's proselytization, religious discrimination in the Chemistry Department, and the system-wide promotion of a particular religion by TAMUC were not made pursuant to

his official job duties.

3.    *Whether speech involved a matter of public concern*

A public employee's speech is only constitutionally protected if it "addresses a matter of 'public concern.'" *Harris ex rel. Harris v. Pontotoc Cnty. Sch. Dist.,* 635 F.3d 685, 692 (5th Cir. 2011) (quoting *Connick v. Myers,* 461 U.S. 138, 147 (1983)). "Whether the speech at issue is on a matter of public concern is a question of law that must be determined by the court." *Salge v. Edna Indep. Sch. Dist.*, 411 F.3d 178, 184 (5th Cir. 2005).

"Matters of public concern are those which can be 'fairly considered as relating to any matter of political, social, or other concern to the community.'" *Branton v. City of Dallas*, 272 F.3d 730, 739 (5th Cir. 2001). Notwithstanding this principle, even when a public employee's speech relates to a topic of public interest, as is often the case in the public employment setting, it is not considered to be on a "matter of public concern" if the speaker spoke as an employee rather than as a citizen. *Harris*, 635 F.3d at 692; *see also Connick*, 461 U.S. at 147. Speech that is purely on a matter of personal interest is spoken as an employee and is not constitutionally protected. *See Connick*, 461 U.S. at 147-48; *Benningfield v. City of Houston*, 157 F.3d 369, 375 (5th Cir. 1998). However, "[t]he existence of an element of personal interest on the part of an employee in the speech does not prevent finding that the speech as a whole raises issues of public concern." *Dodds v. Childers*, 933 F.2d 271, 273 (5th Cir. 1991). Speech that touches on both matters of public and personal interest – so-called "mixed speech" – remains protected by the First Amendment as long as it was made "predominantly 'as a

citizen.'" *Harris*, 635 F.3d at 692 (quoting *Dodds*, 933 F.2d at 273).

In determining whether a plaintiff spoke primarily as a citizen on a matter of public concern or as an employee on a matter of personal interest, a court must consider "the content, form, and context of a given statement, as revealed by the whole record." *Connick*, 461 U.S. at 147-48; *Fiesel v. Cherry*, 294 F.3d 664, 668 (5th Cir. 2002). These factors "must be considered as a whole package, and [their] significance ... will differ depending on the circumstances of the particular situation." *Moore v. City of Kilgore*, 877 F.2d 364, 370 (5th Cir. 1989).

The Fifth Circuit has recognized "three reliable principles" derived from its case law regarding whether public employee speech is made as a citizen on a matter of public concern. First, the speech's content may relate to the public concern if it does not involve solely personal matters or strictly a discussion of management's policies that is only interesting to the public by virtue of the manager's status as an arm of the government. If releasing the speech to the public would inform the populace of more than the fact of an employee's employment grievance, the content of the speech may be public in nature. Second, speech need not be made to the public, but it may relate to the public concern if it is made against the backdrop of public debate. And, third, the speech cannot be made in furtherance of a personal employer-employee dispute if it is to relate to the public concern. *See Kennedy v. Tangipahoa Parish Library Bd. of Control*, 224 F.3d 359, 372 (5th Cir. 2000) (citing cases), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562-63 (2007). In accordance with these precepts, the Fifth Circuit has noted that speech regarding "'internal personnel

-22-

disputes and working conditions'" will not ordinarily involve the public concern. *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004) (quoting *Branton*, 272 F.3d at 739).

In their renewed motion, Defendants argue that Plaintiff spoke as a university employee on matters predominately of personal interest. *See* Dkt. No. 132 at 11-12. The undersigned agrees that Plaintiff's statements concerning student scholarships, nepotism in the Chemistry Department, and Lemanski's job application appear to fall within this category because they were closely related to his job duties, his motivation was to speak as an employee, and they were made, at least in part, in furtherance of his ongoing employment dispute with TAMUC. Thus, those statements did not involve matters of public concern and are not protected speech. However, Plaintiff's statements concerning the safety issues in the Chemistry Department laboratory, an alleged cover up after the fire, Jang's proselytization, religious discrimination in the Chemistry Department, and systemwide promotion of a particular religion at TAMUC did involve matters of public concern.

*4.    Whether Plaintiff's interest in speaking outweighed his employer's interest in promoting workplace efficiency*

Even if a public employee speaks on a matter of public concern, his speech is not protected unless the employee's interest in expressing himself on the matter outweighs the government's interest in promoting the efficiency of its public services. *See Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968). "The court will resolve the legal question[] of ... whether the plaintiff's interests outweigh the government's interests."

*Randolph v. Tex. Rehabilitation Comm'n*, 214 F. App'x 424, 426 (5th Cir. 2007). To resolve this issue, the Court performs a balancing test that "in reality is a sliding scale or spectrum upon which 'public concern is weighed against disruption'" to the government's interest in efficient operation. *Vojvodich v. Lopez*, 48 F.3d 879, 885 (5th Cir. 1995) (quoting *Click v. Copeland*, 970 F.2d 106, 112 (5th Cir. 1992) (internal quotations omitted)). "The more central a matter of public concern is to the speech at issue, the stronger the employer's showing of counter-balancing governmental interest must be." *Coughlin v. Lee*, 946 F.2d 1152, 1157 (5th Cir. 1991) (citing cases). In weighing the parties' competing interests, the Court considers, among other things, "'(1) the degree to which the employee's activity involved a matter of public concern; (2) the time, place, and manner of the employee's activity; (3) whether close working relationships are essential to fulfilling the employee's public responsibilities and the potential effect of the employee's activity on those relationships; (4) whether the employee's activity may be characterized as hostile, abusive, or insubordinate; and (5) whether the activity impairs discipline by superiors or harmony among coworkers.'" *Jordan v. Ector Cnty.*, 516 F.3d 290, 299 (5th Cir. 2008) (quoting *Brady v. Fort Bend Cnty.*, 145 F.3d 691, 707 (5th Cir. 1998)).

In resolving this balance, "[o]ne relevant consideration is whether the speech at issue 'impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes performance of the speaker's duties or interferes with the regular operation of the [public employer's] enterprise.'" *Morris v. Crow*, 117 F.3d 449,

457 (11th Cir. 1997) (quoting *Rankin v. McPherson*, 483 U.S. 378, 388 (1987)). In this case, the summary judgment evidence shows that the manner in which Plaintiff's statements were expressed was disrespectful, demeaning, rude, and insulting and that it was perceived as such by his co-workers. Plaintiff engaged in vitriolic attacks on TAMUC's students, faculty and staff, and his superiors. It is undisputed that Plaintiff's speech and related activities caused serious discipline problems, undermined employee morale, and impaired harmony among co-workers, so much so that numerous complaints were filed against Plaintiff by both other professors and students.

These disruptions weigh heavily in TAMUC's favor, and TAMUC had an interest in promoting workplace efficiency which was threatened by Plaintiff's statements concerning the use of public funds for improper scholarships, nepotism in the Chemistry Department, and pointing out discrepancies in Lemanski's job application. But TAMUC's interest in promoting workplace efficiency was outweighed by Plaintiff's interest in expressing himself on the subjects of religious proselytization and discrimination in Chemistry Department, and the system-wide promotion of a particular religion at TAMUC, as well as concerns about safety practices and an alleged cover-up after the Chemistry Department fire.

5.   *Summary of whether Plaintiff's speech was protected under the First Amendment*

The undersigned concludes, as a matter of law, that Plaintiff's speech concerning whether TAMUC used public funds to award scholarships to undeserving students, his accusations of nepotism by Jang, and his criticism of Lemanski for misstatements in Lemanski's job application at TAMUC were made pursuant to Plaintiff's official job

duties and did not involve matters of public concern and that TAMUC's interest in promoting workplace efficiency outweighed Plaintiff's interest in making those statements. Plaintiff's speech on those subjects therefore was not protected by the First Amendment.

But the undersigned concludes, as a matter of law, that Plaintiff's statements raising the issue of Jang's proselytization of a Chemistry Department employee (Shi) and the employee's wife, alleging religious favoritism and discrimination in the Chemistry Department, pointing out a system-wide promotion of a particular religion at TAMUC, expressing concerns about laboratory safety, and exposing a cover-up following the fire in the Chemistry Department were not made pursuant to Plaintiff's official job duties and did involve matters of public concern and that Plaintiff's interest in making those statements outweighed TAMUC's interest in promoting workplace efficiency. Therefore, Plaintiff's speech on those subjects was protected by the First Amendment.

B.    <u>Was the Individual Defendants' conduct objectively reasonable in light of the clearly established law?</u>

Turning to the second part of the qualified immunity test, insofar as Plaintiff has alleged a violation of a constitutional right, the Court must determine "whether the defendant's conduct was objectively reasonable in light of the clearly established law at the time of the incident." *Charles*, 522 F.3d at 511. This entails the two-part inquiry whether the right was "clearly established" at the time of the challenged conduct, *al-Kidd*, 131 S. Ct. at 2080, and, even if it was, whether the Individual Defendant's

-26-

conduct was nevertheless "objectively reasonable," *Davis*, 518 F.3d at 317. These requirements combine to bear out the Fifth Circuit's repeated observation that "[t]he qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000) (quoting *Malley v. Briggs*, 475 U.S. 335, 343 (1986)).

1.    *Was the right clearly established?*

"A government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he coutours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *al-Kidd*, 131 S. Ct. at 2083 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Conversely, an official's conduct does not violate clearly established law if a reasonable official could have believed his conduct was lawful. *See Anderson*, 483 U.S. at 641. "The applicable law that binds the conduct of officeholders must be clearly established at the time the allegedly actionable conduct occurs." *Wyatt v. Fletcher*, 718 F.3d 496, 502-03 (5th Cir. 2013). The critical question is whether the state of the law at the time gave the official "'fair warning'" that his or her act was unconstitutional. *Morgan v. Swanson* 659 F.3d 359, 372 (5th Cir. 2011) (en banc) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). The Court "must ask whether the law so clearly and unambiguously prohibited his conduct that every reasonable official would understand that what he is doing violates [the law]," and, "[t]o answer that question in the affirmative, [the Court] must be able to point to controlling authority – or a "robust

consensus of persuasive authority – that defines the contours of the right in question with a high degree of particularity." *Id.* (internal quotation marks and footnotes omitted). A "'case directly on point'" is not required. *Id.* at 412 (quoting *al-Kidd*, 131 S. Ct at 2083). "[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope*, 536 U.S. at 741.

But a court must ask "not only whether courts have recognized the *existence* of a particular constitutional right, but also … whether that right has been defined with sufficient clarity to enable a reasonable official to assess the lawfulness of his conduct." *Morgan*, 659 F.3d at 372 (quoting *McClendon,* 305 F.3d at 331). "Under the Fifth Circuit standard, the doctrine of qualified immunity protects government officials from civil damages liability when they reasonably could have believed that their conduct was not barred by law, and immunity is not denied unless existing precedent places the constitutional question *beyond debate*." *Wyatt*, 718 F.3d at 503. "This requirement establishes a high bar. When there is no controlling authority specifically prohibiting a defendant's conduct, the law is not clearly established for the purposes of defeating qualified immunity." *Id.*

"The scope of clearly established law" is a legal issue for the Court to decide. *Thompson v. Upshur Cnty., Tex.*, 245 F.3d 447, 456 (5th Cir. 2001); *see also Elder v. Holloway*, 510 U.S. 510, 516 (1994) ("Whether an asserted federal right was clearly established at a particular time, so that a public official who allegedly violated the right has no qualified immunity from suit, presents a question of law, not one of 'legal facts.'").

At the time of the alleged violation of Plaintiff's First Amendment rights in 2009 and later, both Supreme Court and Fifth Circuit law clearly proscribed retaliation by a government employer against an employee for engaging in protected speech. *See Davis*, 518 F.3d at 317 (citations omitted); *Petrie*, 904 F. Supp. 2d at 589-91; *see also Haverda*, 723 F.3d at 599 ("[T]here is no doubt that Haverda had a clearly established constitutional right not to be fired for engaging in protected speech."). "More specific to the conduct at issue in this case, the law was clearly established that speech directed to a person outside of the workplace on a matter of public concern only tangentially related to official duties is speech protected by the First Amendment." *Petrie*, 2013 WL 5835612, at *3; *see also Petrie*, 904 F. Supp. 2d at 590 ("By the summer of 2009, when the alleged violation occurred, the Supreme Court and Fifth Circuit had explained that speech was not constitutionally protected if made 'pursuant to official duties.' The Fifth Circuit had further defined 'pursuant to official duties' as 'activities undertaken in the course of performing one's job.' And it had clarified that an employee making external communications is typically not speaking 'pursuant to official duties.'" (citations omitted)). "The law was also clear as of 2009 that a public employee's speech as a citizen on issues of public concern, even if mixed with personal issues, was protected by the First Amendment and that courts should look to content, form, and context of the speech to evaluate this question." *Petrie*, 904 F. Supp. 2d at 590.

The undersigned has already concluded that, as to Plaintiff's statements raising the issue of Jang's proselytization of a Chemistry Department employee and the employee's wife, alleging religious favoritism and discrimination in the Chemistry

Department, pointing out a system-wide promotion of a particular religion at TAMUC, expressing concerns about laboratory safety, and exposing a cover-up following the fire in the Chemistry Department, Plaintiff was speaking as a citizen on a matter of public concern under the current law. And the law regarding this matter has been relatively unchanged since 2009. *See id.*

However, the Individual Defendants further argue that the law was unclear as to what constitutes an adverse employment action. Although, as discussed more fully below, Plaintiff generally asserts that he suffered more than fifty materially adverse actions, *see* Dkt. No. 127 at 41, the undersigned notes that the Fifth Circuit has held adverse employment actions include only ultimate employment decisions such as "discharges, demotions, refusals to hire, refusals to promote, and reprimands." *Alvarado v. Tex. Rangers*, 492 F.3d 605, 612 (5th Cir. 2007) (quoting *Breaux v. City of Garland*, 205 F.3d 150, 157 (5th Cir. 2000)). That was certainly clearly established at the relevant time in 2009 and later.

Plaintiff does not assert that his demotion from head of the department was an adverse employment action. *See* Dkt. No. 81 at 16 ("[Plaintiff] did not complain when asked to step down as department head; he gladly resigned...."). However, insofar as Plaintiff is claiming that his being suspended with pay pending an investigation and given an unsatisfactory review are adverse employment actions, the undersigned concludes that the scope of Plaintiff's rights against First Amendment retaliation were not defined with sufficient clarity to enable a reasonable official to assess the lawfulness of his conduct. Generally neither a negative employment evaluation nor an

employer's internal investigation of an employee rises to the level of an adverse employment action, *see Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 290 (6th Cir. 2012); *Harper v. C.R. England, Inc.*, 687 F.3d 297, 306 n.31 (7th Cir. 2012), *Kuhn v. Washtenaw Cnty.*, 709 F.3d 612, 625-26 (6th Cir. 2013), and it is a closer question whether being placed on paid administrative does, *see McCoy v. City of Shreveport*, 492 F.3d 551, 561 (5th Cir. 2007); *see also Gibson*, 734 F.3d at 400 n.4 ("We assume without deciding that a reprimand is an adverse employment action for the purposes of a § 1983 claim. While the Supreme Court has clarified that, under Title VII, a plaintiff must prove that a reasonable employee would have found the alleged adverse employment action 'materially adverse,' *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006), this court has not yet decided whether the *Burlington* standard for adverse employment actions also applies to First Amendment retaliation cases....").

Under these circumstances, the Individual Defendants' alleged conduct did not violate clearly established law insofar as Plaintiff asserts that they retaliated against him by taking any action other than terminating him. *See DePree v. Saunders*, 588 F.3d 282, 288-89 (5th Cir. 2009); *see also Charles*, 522 F.3d at 511 ("Terminating an employee for engaging in protected speech ... is an objectively unreasonable violation of such an employee's First Amendment rights.").

2.     *Was the Individual Defendants' conduct objectively reasonable?*

Even if the right was clearly established at the time of the alleged violation, a defendant will still be entitled to qualified immunity if the defendant's conduct was

"objectively reasonable in light of 'clearly established' law at the time of the violation." *Porter v. Ascension Parish Sch. Bd.*, 393 F.3d 608, 614 (5th Cir. 2004). The reasonableness of an official's actions must be assessed in light of "the facts available to him at the time of his action and the law that was clearly established at the time of the alleged illegal acts." *Id.* The Individual Defendants argue that their conduct was objectively reasonable in light of the circumstances known by them at the time they acted. "[W]hether a given course of conduct would be objectively unreasonable in light of clearly established law" is a "purely legal question." *Kinney v. Weaver*, 367 F.3d 337, 347 (5th Cir. 2004); *see also Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) ("Whether an official's conduct was objectively reasonable is a question of law for the court, not a matter of fact for the jury.").

a.    Jang

Defendant Jang was a professor in the Chemistry Department, and he succeeded Plaintiff as head of the department. Jang was the person responsible for initiating the grievance by the Chemistry Department faculty against Plaintiff. In addition to filing other complaints against Plaintiff himself, Jang allegedly also prepared and worked with students to circulate a petition calling for Plaintiff's removal after the laboratory fire on March 15, 2010 and Plaintiff's statements to the media about hazardous practices and a cover-up. Plaintiff was removed from his position as Head of the Chemistry Department after an investigation of the Chemistry Department complaint and subsequently terminated.

Plaintiff argues that Jang's actions were in retaliation for his assistance to Shi

in preparing a complaint concerning Jang's proselytization and Plaintiff's remarks to the media following the fire in the laboratory of Jang's protégé, Ni. Viewing the facts in the light most favorable to Plaintiff and assessed in light of the facts available to Jang at the time of his actions and the law that was clearly established at the time of the alleged illegal acts, as discussed above, a reasonable official in Jang's position would have determined that Plaintiff's speech at issue was made as a citizen on a matter of public concern and would have known that actions resulting in Plaintiff's termination as a result of that speech could be considered unlawful. The undersigned therefore concludes that Jang's alleged conduct was not objectively reasonable in light of clearly established law at the time of the alleged violation.

b.    Evans

Defendant Evans is a former Dean of the College of Arts and Sciences and a current Professor of Agricultural Sciences. Plaintiff alleges that Evans suspended him to punish him for speaking out against establishment of religion at TAMUC and religious favoritism by Jang. Viewing the facts in the light most favorable to Plaintiff, Evans twice negatively evaluated Plaintiff's performance and characterized Plaintiff as "a severe problem for all of us," actions which, as discussed above, do not rise to the level of an adverse employment action. Evans and Lemanski decided to suspend Plaintiff with pay after receiving the Kopachena committee's recommendation, which was based on an investigation of a student complaint. Evans had forwarded the student's complaint to Lemanski and recommended considering Plaintiff's termination. Evans also instructed faculty and students not to talk to the media after the laboratory

fire, but Plaintiff did so anyway.

Viewing the facts in the light most favorable to Plaintiff and assessed in light of the facts available to Evans at the time of her actions and the law that was clearly established at the time of the alleged illegal acts, the undersigned concludes that a reasonable official in Evans's position would have determined that Plaintiff's speech was made as a citizen on a matter of public concern and, hence, protected, but would not have known that suspending Plaintiff as a result of that speech would necessarily be unlawful. The undersigned therefore concludes that Evans's alleged conduct was objectively reasonable in light of clearly established law at the time of the alleged violation.

c.    Lemanski

Defendant Lemanski is the Provost and Vice President for Academic Affairs at TAMUC. Viewing the facts in the light most favorable to Plaintiff, Lemanski participated in the decision to suspend Plaintiff with pay following the Kopachena committee's recommendation. According to Plaintiff, Lemanski was approached by a student and provided several versions of the 400-student petition complaining about Plaintiff and calling for his ouster and also instructed an employee to solicit student signatures for the petition. Lemanski subsequently appointed the Fullwood committee to investigate Plaintiff, based, in part, on the allegations in the petition. Plaintiff reported an error in Lemanski's military experience as shown on the TAMUC website and sought an investigation. Lemanski subsequently corrected the error. One month before Plaintiff was terminated, Lemanski criticized Plaintiff for reporting the error

to TAMUC authorities.

Viewing the facts in the light most favorable to Plaintiff and assessed in light of the facts available to Lemanski at the time of his actions and the law that was clearly established at the time of the alleged illegal acts, the undersigned concludes that a reasonable official in Lemanski's position would not have determined that Plaintiff's speech at issue as to Lemanski was made as a citizen on a matter of public concern and, hence, protected, and would not have known that suspending Plaintiff or expelling him from campus as a result of that speech would necessarily be unlawful. The undersigned therefore concludes that Lemanski's alleged conduct was objectively reasonable in light of clearly established law at the time of the alleged violation.

d.    Jones

Defendant Jones is the President and Chief Executive Officer of TAMUC. Viewing the facts in the light most favorable to Plaintiff, Jones failed to investigate, forward, or even take seriously several complaints filed by Kostic, including one that was critical of Jones himself. Those complaints allegedly included issues such as waste of public funds, ethnic and religious discrimination, and Jang's retaliation. According to Plaintiff, shortly after the fire, a student approached Jones and offered to collect signatures for a petition complaining about Plaintiff and calling for his ouster; Jones later was given several versions of the petition; and Jones used the petition as a ground for terminating Plaintiff. Jones prepared the notice of termination and set forth numerous reasons for Plaintiff's termination. Following Plaintiff's appeal and the Fullwood committee's investigation and recommendation, Jones recommended to

Chancellor McKinney that Plaintiff be terminated.

Viewing the facts in the light most favorable to Plaintiff and assessed in light of the facts available to Jones at the time of his actions and the law that was clearly established at the time of the alleged illegal acts, as discussed above, a reasonable official in Jones's position would have determined that Plaintiff's speech at issue at this point as to Jones was made as a citizen on a matter of public concern and would have known that actions resulting in Plaintiff's termination as a result of that speech could be considered unlawful. The undersigned therefore concludes that Jones's alleged conduct was not objectively reasonable in light of clearly established law at the time of the alleged violation.

e.    McKinney

Defendant McKinney is the former Chancellor of TAMUC and was the final decisionmaker concerning Plaintiff's termination. Viewing the evidence in the light most favorable to Plaintiff, Defendant McKinney ignored Plaintiff's complaints about retaliation and did not make his own independent investigation or order Defendant Jones to make an investigation, but, rather, McKinney relied on Jones's recommendation to terminate Plaintiff after receiving the Fullwood committee recommendation to do the same, and delayed notifying Plaintiff of his termination.

Viewing the facts in the light most favorable to Plaintiff and assessed in light of the facts available to McKinney at the time of his actions and the law that was clearly established at the time of the alleged illegal acts, as discussed above, a reasonable official in McKinney's position would have determined that Plaintiff's

speech at issue at this point as to McKinney was made as a citizen on a matter of public concern and would have known that actions resulting in Plaintiff's termination as a result of that speech could be considered unlawful. The undersigned therefore concludes that McKinney's alleged conduct was not objectively reasonable in light of clearly established law at the time of the alleged violation.

The undersigned concludes that Defendants Evans and Lemanski are entitled to summary judgment in their favor in full on Plaintiff's First Amendment retaliation claim based on the defense of qualified immunity. Defendants Jang, Jones, and McKinney are entitled to summary judgment in their favor on Plaintiff's First Amendment retaliation claim on the defense of qualified immunity except insofar as Plaintiff's claim is based on his termination and based on Plaintiff's statements raising the issue of Jang's proselytization of a Chemistry Department employee and the employee's wife, religious discrimination in the Chemistry Department, pointing out a system-wide promotion of a particular religion at TAMUC, expressing concerns about laboratory safety, and exposing a cover-up following the fire in the Chemistry Department.

## IV.    Official Immunity

Defendant Jang contends that he enjoys official immunity from Plaintiff's defamation claim against him. Texas law provides that "[g]overnment employees are entitled to official immunity from suit arising from the performance of their (1) discretionary duties in (2) good faith as long as they are (3) acting within the scope of their authority." *Florance v. Buchmeyer*, 500 F. Supp. 2d 618, 641 (N.D. Tex. 2007)

(quoting *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994)). Under Texas law, a defendant bears the burden to establish that official immunity applies. *See Mowbray v. Cameron Cnty., Tex.*, 274 F.3d 269, 280 (5th Cir. 2001) ("The defendant claiming official immunity bears the burden of proving all elements of the defense.").

Plaintiff's defamation claim against Defendant Jang is based on an April 11, 2007 memo Jang prepared and sent to TAMUC's president, provost, and human resources director. At that time, Plaintiff was head of the Chemistry Department and Defendant Jang's supervisor. The memo was signed by other Chemistry Department faculty and staff. *See* Dkt. No. 127 at 37-40.

As for the third element of this defense, public officials act within the scope of their authority when they "are discharging the duties generally assigned to them." *Ballantyne v. Champion Builders, Inc.*, 144 S.W.3d 417, 422 (Tex. 2004). In the context of the requirement under the Texas Tort Claims Act that the defamation claim be filed against Jang based on conduct within the general scope of his employment, Judge Lynn has already concluded that "Defendants have failed to adequately develop the evidence of whether Jang was acting within the scope of his employment when he made the allegedly defamatory remarks." Dkt. No. 106 at 2. Defendants have not come forward with any new evidence in this regard. *See* Dkt. No. 108 at 5-7; Dkt. No. 132 at 19-20. Accordingly, for the same reason that summary judgment was denied on Jang's Section 101.106(f) defense, the Court should deny summary judgment on Jang's state law official immunity defense.

### V.   Defendants' Additional Summary Judgment Arguments

In the April 3, 2013 Order, the District Court allowed Defendants "to file a second motion for summary judgment on the remaining claims, <u>based on the defenses of qualified and official immunity</u>." Dkt. No. 106 (emphasis added). Defendants greatly exceed the limited scope of what Judge Lynn allowed them to address. In their renewed motion, they address not only immunity, *see id.* at 3-6, but also ask the Court to reconsider its prior summary judgment rulings on the retaliation and defamation claims, *see id.* at 7-13. Furthermore, by incorporating numerous documents by reference in their renewed motion, response, and reply, the parties exceed the page limitations for motions and briefs. *See* N.D. TEX. L. CIV. R. 7.1 & 7.2.

The undersigned considered recommending that the Court strike all portions of the renewed motion, response, and reply that exceed the scope of the Court's April 3, 2013 Order. However, because additional arguments addressed to Plaintiff's retaliation and defamation claims and certain defenses were raised in Defendants' original summary judgment motion and were not addressed by the undersigned or, apparently, by Judge Lynn, *see* Dkt. Nos. 100 & 105, or because Defendants are raising a motion for reconsideration of certain summary judgment arguments rejected by Judge Lynn, the undersigned respectfully recommends that the Court should address the arguments presented in Defendants' renewed summary judgment briefing and will make findings, conclusions, and recommendations as to each herein.

A.   Grounds for summary judgment as to Section 1983 retaliation claim not previously reached

In their renewed motion, the Individual Defendants assert that they are entitled to summary judgment on Plaintiff's Section 1983 retaliation claim, even though Judge Lynn determined that a genuine dispute of material fact exists as to whether Jones's alleged retaliatory motive was a causal factor in McKinney's final decision, because they have articulated non-retaliatory justifications for Plaintiff's termination, as set forth in the notice of dismissal and appeal process, and Plaintiff cannot show that those grounds were pretextual or that retaliation was the but-for cause of his termination. As noted above, the final two elements of Plaintiff's First Amendment retaliation claim under Section 1983 are that Plaintiff suffered an adverse employment action and that the adverse action was substantially motivated by the protected speech. *See Javiar*, 666 F.3d at 332; *Petrie*, 904 F. Supp. 2d at 576. The undersigned will examine each element in turn.

1.   *Whether Plaintiff suffered an adverse employment action*

Plaintiff generally asserts that he suffered more than fifty materially adverse actions, *see* Dkt. No. 127 at 41; claims that he is not limited to ultimate tangible adverse actions, *id.* at 38; and in a footnote incorporates by reference "most pages" of his response to the original motion for summary and all of his supporting brief, *see id.* at 41; Dkt. Nos. 81, 82. The undersigned concludes that the Court can and should decline to parse Plaintiff's prior filings in this case to ferret out all possible materially adverse employment actions. To the extent that Plaintiff may be relying on the

cumulative effect of these unspecified acts to establish an adverse employment action or to impute liability to the Individual Defendants for each of those actions, the Court notes that the Fifth Circuit has held adverse employment actions include only ultimate employment decisions such as "discharges, demotions, refusals to hire, refusals to promote, and reprimands." *Alvarado,* 492 F.3d at 612 (quoting *Breaux,* 205 F.3d at 157). And, more generally, if the action complained of "'does not affect job duties, compensation, or benefits,'" it is not an adverse employment action. *Pegram v. Honeywell, Inc.,* 361 F.3d 272, 282 (5th Cir. 2004) (quoting *Banks v. E. Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003)).

Further, the undersigned recommends that Plaintiff's claim must be limited to the allegedly adverse action of termination, because, as discussed above, the Individual Defendants' alleged conduct did not violate clearly established law insofar as Plaintiff asserts that they retaliated against him by taking any action other than terminating him and, therefore, the Individual Defendants are entitled to qualified immunity from a claim based on any other alleged adverse employment action.

Focusing, then, on Plaintiff's termination, the undersigned finds enough evidence to raise a genuine dispute of material fact on this issue. It is undisputed that Plaintiff was terminated and that termination is an adverse employment action. Viewed in the light most favorable to Plaintiff, the summary judgment evidence establishes at least a genuine dispute of material fact as to whether Plaintiff suffered

an adverse employment action when he was terminated.[1]

2.    *Whether the adverse action was substantially motivated by the protected speech*

Defendants assert that Plaintiff cannot show a causal connection between his protected speech and any adverse action. *See Mooney v. Lafayette Cnty. Sch. Dist.*, ___ F. App'x ___, 2013 WL 4018662, at *4 (5th Cir. Aug. 8, 2013). Once a plaintiff has met his burden of showing that his protected speech was a motivating factor in the defendant's adverse employment decision, a defendant may still avoid liability by showing, by a preponderance of the evidence, that it would have taken the same adverse employment action even in the absence of the protected speech. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287 (1977); *Mooney*, 2013 WL 4018662, at *5; *Haverda*, 723 F.3d at 591-92; *Charles*, 522 F.3d at 516 n.28. That is, even if Plaintiff could show that his protected speech was a motivating factor in his termination, the Individual Defendants may still avoid liability by showing they would have taken the same action of terminating him even in the absence of the protected speech. *See Haverda,* 723 F.3d at 595. An employee can, however, refute that showing by presenting evidence that "'his employer's ostensible explanation for the discharge

_____

[1] Judge Lynn's prior observation in a recent case applies equally well here: "The Court notes that, in the context of Title VII retaliation claims, the Supreme Court has broadened the meaning of 'adverse employment action' to include any action that might dissuade a reasonable worker from making a charge of discrimination or sexual harassment. *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). The Fifth Circuit has not yet addressed whether this broader standard applies to section 1983 retaliation claims. As Plaintiff satisfies the higher standard outlined in [Fifth Circuit precedent] in any event, the Court need not decide whether a looser standard may apply." *Petrie*, 904 F. Supp. 2d at 584 n.7.

is merely pretextual.'" *Id*. at 592 (quoting *Coughlin*, at 1157).[2] Thus, Plaintiff may refute that showing by presenting evidence that his employer's explanation for the adverse employment action is merely pretextual. *See id*. at 595.

But the undersigned notes that "[s]ummary judgment should be used most sparingly in ... First Amendment cases ... involving delicate constitutional rights, complex fact situations, disputed testimony, and questionable credibilities." *Id*. at 592 (internal quotation marks omitted). And, more specifically, the Fifth "Circuit has held that summary disposition of the causation issue in First Amendment retaliation claims is generally inappropriate." *Id*. at 595. "Courts applying the *Mt. Healthy* doctrine in summary disposition analyses have held that if a plaintiff brings forth evidence of pretext, the determination whether the employer's stated reasons are pretextual is a fact issue reserved for the jury." *Id*. at 595-96. "Courts deciding the causation issue by summary disposition have generally done so only when the employer's reasons have not been controverted." *Id*. at 596.

The undersigned finds that Plaintiff has met his burden, on summary judgment, to make a *prima facie* showing that his protected speech was a motivating factor in his termination. Plaintiff was removed from his position as Head of the Chemistry

---

[2] The *Coughlin* decision predates the authorities on which the Fifth Circuit later relied in stating that "First Amendment retaliation claims are governed by the *Mt. Healthy* 'mixed-motives' framework, not by the *McDonnell Douglas* pretext analysis." *Gonzales v. Dallas Cnty.*, 249 F.3d 406, 412 n.6 (5th Cir. 2001); *accord Click*, 970 F.2d at 113) (following *Coughlin*). The undersigned therefore understands, as the recent *Haverda* decision states, that Plaintiff may rely on a showing of pretext to survive summary judgment on his First Amendment retaliation claim.

Department after Defendant Jang spearheaded a complaint from the department faculty. Plaintiff then raised concerns about Jang's religious proselytization and discrimination in the Chemistry Department, which was protected speech. Thereafter, there were several student complaints, including the 400-student petition that was submitted shortly after Plaintiff's statements about safety issues concerning the Chemistry Department fire and his allegations of a cover-up, which were also protected speech. Plaintiff's evidence weaves a web of influence from Jang to Lemanski to Jones to McKinney, with each playing a role, either directly or indirectly, in his termination, and traces the motivation for his termination, at least in part, back to his protected speech. And the Individual Defendants have made little effort to demonstrate the absence of a genuine issue of material fact as to whether the Individual Defendants were aware of Plaintiff's protected speech. *See* Dkt. No. 108 at 9; Dkt. No. 132 at 8 n.6, 9; *compare* Dkt. No. 62 at 23 (stating that Plaintiff "cannot show that the relevant decision-makers were aware of all of his putative protected speech, especially his alleged criticism of the January 2009 ceremony and the April 2009 Good Friday closing").

Defendant Jang is the Head of the Chemistry Department and a Professor of Chemistry. Jang was the only other tenured professor in the Chemistry Department when Plaintiff came to TAMUC as head of the department in June 2006. Jang took the lead in preparing an April 11, 2007 memo from the Chemistry Department faculty and staff presenting grievances against Plaintiff. The grievances accused Plaintiff of "extremely condescending and demeaning" treatment of faculty, staff, and students.

Within days, Plaintiff was asked by the dean to resign as department head, which he did, and Plaintiff was replaced by Jang. Plaintiff then assisted Shi to prepare a January 9, 2009 complaint against Jang and also filed one himself. In the complaint, Plaintiff alleged Jang pressured Shi and his wife to participate in religious activities, and accused Jang of religious preference and discrimination in the Chemistry Department, all of which was protected speech. Plaintiff also raised safety concerns about the Chemistry Department laboratory assigned to Jang's protégé, Ni, and went public with those concerns after the fire in the laboratory, as well as accusing TAMUC in the media of a cover-up following the fire. The 400-page student petition calling for Plaintiff's ouster was prepared and submitted shortly after the Plaintiff's protected speech concerning safety issues and the fire, and it was one of the reasons given for Plaintiff's termination. The undersigned concludes that Plaintiff has raised at least a genuine dispute of material fact concerning whether any adverse employment actions attributable to Jang were substantially motivated by Plaintiff's protected speech.

Defendant Jones is the President and Chief Executive Officer of TAMUC. Lemanski informed Jones of the Fullwood committee's findings and recommendation. On June 17, 2010, Jones sent Plaintiff a notice of dismissal, which based termination on grounds that paralleled those found by the Fullwood committee. One of those grounds was the 400-student petition, which Jones allegedly knew was unreliable. Defendant Jones ordered TAMUC faculty not to talk to the media after the fire, and the 400-page petition was prepared shortly after Plaintiff's protected speech concerning the fire. Some of Plaintiff's protected speech concerning the alleged establishment of

religion at TAMUC were aimed at TAMUC's highest officials, including Jones. Plaintiff appealed the notice of dismissal, and the appeal was referred to a standing committee headed by Dr. Chris Myers, which voted twelve to three to recommend Plaintiff's termination. A week after receiving the Myers committee report, Jones forwarded the report, the hearing transcript, a copy of his June 17 dismissal letter, and his recommendation that Plaintiff be terminated to Chancellor McKinney. The undersigned concludes that Plaintiff has raised at least a genuine dispute of material fact concerning whether any adverse employment actions by Jones were substantially motivated by Plaintiff's protected speech.

Defendant McKinney is the former Chancellor of TAMUC and was the final decision maker. McKinney read the Myers committee report, hearing transcript, and Jones' recommendation. Plaintiff was terminated by McKinney on December 8, 2010. The undersigned concludes that Plaintiff has raised at least a genuine dispute of material fact concerning whether any adverse employment actions by McKinney, for which he relied on Jones's recommendation, were substantially motivated by Plaintiff's protected speech.

The Individual Defendants argue that, even if Plaintiff made out a *prima facie* case, they would have taken the same adverse employment actions in the absence of Plaintiff's protected speech. President Jones clearly articulated legitimate, non-retaliatory reasons for Plaintiff's termination and its timing. Plaintiff attacks some of those reasons, but not others. But Defendants maintain that McKinney believed that Plaintiff's termination was justified because not only had Plaintiff violated several

laws, but also he was, at best, the catalyst to increasing strife in the Chemistry Department and the subject of numerous reports of misconduct from multiple sources at TAMUC – including Plaintiff's subordinates, equals, supervisors, and students – some of which resulted in investigations. *See LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007); *see also Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 379 (5th Cir. 2010) ("In cases in which an employer discharges an employee based on the complaint of another employee, the issue is not the truth or falsity of the allegation, but whether the employer reasonably believed the employee's allegation and acted on it in good faith." (internal quotation marks omitted)).

In the notice of termination, President Jones informed Plaintiff that the grounds for termination were based on professional incompetence, moral turpitude adversely affecting the performance of duties or the meeting of responsibilities to TAMUC or its students or associates, and violation of TAMUC policies, system regulations, rules, or laws substantially related to performance of faculty duties. *See* Dkt. No. 63-4 at 1206-07. President Jones also listed twelve specific violations supporting those grounds. *See id.* Those violations included sending a letter to a pregnant student's physician requesting medical information, denying a student's request to drop a class and harassing her about her medical condition, publicly humiliating two students in front of their peers, humiliating four TAMUC employees or potential employees, purchasing chemicals with Higher Education Funds and shipping them to another university that had no current working relationship with TAMUC, and sexual harassment of two female students. *See id.* The notice of termination also addressed complaints in the

"[p]etition received from over 400 students stating that you have 'fostered an atmosphere of hostility, discrimination, unfair grading practices, and sexual harassment.'" *Id.* Although Judge Lynn has noted that "[t]he notice of termination he sent to Plaintiff referred to a number of prior events Plaintiff claimed to be retaliatory," Dkt. No. 105 at 1, none of the allegedly protected speech was mentioned.

But Plaintiff may refute Defendants' showing of legitimate, non-retaliatory reasons by presenting evidence that his employer's explanation for the adverse employment action is merely pretextual. *See Haverda,* 723 F.3d at 595. And the undersigned is mindful of the Fifth Circuit's guidance that "summary disposition of the causation issue in First Amendment retaliation claims is generally inappropriate." *Id.* Still, Plaintiff "must show that a material issue of fact exists as to whether [Defendants'] explanation is pretextual." *Aryain v. Wal-Mart Stores Tex., LP,* 534 F.3d 473, 486-87 (5th Cir. 2008).

Defendants assert that Plaintiff "has utterly failed to create a genuine fact issue as to whether the defendants' legitimate non-retaliatory grounds for his termination – as articulated in the dismissal notice and through the appeal process – were pretexts for retaliation" and that Plaintiff "has been unable to create a genuine fact issue as to the element of but-for causal linkage." Dkt. No. 132 at 8-9. For his part, Plaintiff offers little help to the Court, which has no "duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Adams,* 465 F.3d at 164; *accord de la O v. Hous'g Auth. of El Paso,* 417 F.3d 495, 501 (5th Cir. 2005) ("'Judges are not like pigs, hunting for truffles buried in briefs.'" (quoting *United States*

*v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991))); *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) (explaining that, even "[w]hen evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court"). Plaintiff's response to Defendants' renewed summary judgment motion actually informs the Court at one point that his original summary judgment response (containing dozens of pages of factual assertions) and brief "are so full of evidence of retaliation and causation that specifying page numbers in [Plaintiff's original summary judgment response] is unnecessary." Dkt. No. 127 at 37.

But, for all of Plaintiff's voluminous briefing and evidence, the undersigned cannot find that Plaintiff points to evidence sufficient to raise genuine disputes of material fact as to whether the reasons offered for his termination are merely pretextual. The evidence in the summary judgment record reflects that Plaintiff was terminated for his behavior, not his protected speech. And, based on the undersigned's review of the summary judgment evidence, Defendants are correct that, "[t]o support his case for retaliatory motivation, causal connection, and pretext, [Plaintiff] still relies primarily on temporal sequence: that (1) defendants were aware of his putative protected activity and (2) took adverse actions against him afterward." Dkt. No. 132 at 9 (citing Dkt. No. 127 at 15-28, 37-38).

In that regard, "[c]lose timing between an employee's protected activity and an adverse action against [him] may provide the 'causal connection' required to make out a prima facie case of retaliation." *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188

(5th Cir. 1997). But "temporal proximity standing alone is insufficient to establish an issue of fact as to pretext after an employer has provided a non-retaliatory reason." *Aryain*, 534 F.3d at 487.

Likewise, Plaintiff, in alleging pretext, cannot survive summary judgment merely by "disputing the truth of the underlying facts" that led to an employment decision. *Haverda*, 723 F.3d at 596 n.1. Simply disputing the underlying facts "merely implies that an employer may have made a mistake in deciding to take action against an employee," and Plaintiff must still submit evidence to "support an inference that the employer had a retaliatory motive, not just an incorrect belief." *Id.* Further, insofar as Plaintiff points to his other allegations of retaliation, he "cannot prove pretext simply by re-raising [his] otherwise non-actionable allegations of retaliation – such an argument offers no more than the plaintiff's subjective belief that the defendant acted in a retaliatory manner on multiple occasions." *Id.*

For all of his factual assertions and pages of briefing, Plaintiff has not presented sufficient evidence to create a fact issue regarding whether Defendants would have terminated Plaintiff in the absence of the protected speech. *See Haverda*, 723 F.3d at 597. Plaintiff must rebut or at least establish a genuine dispute of material fact as to whether <u>each</u> nonretaliatory reason articulated by his employer is pretextual, *see McCoy*, 492 F.3d at 557, but Plaintiff has not come forward with the kind of contradictory evidence that the Fifth Circuit has held is "fodder for the jury" on the issue of causation, *Click*, 970 F.2d at 114.

Accordingly, although mindful of the Fifth Circuit's guidance that "summary

disposition of the causation issue in First Amendment retaliation claims is generally inappropriate," *id.* at 595, the undersigned concludes that Plaintiff has failed to raise a genuine dispute of material fact as the causation element of his First Amendment retaliation claim.

3.     *Whether anyone other than the final decisionmaker may be held liable*

The Individual Defendants also argue that only final decision-makers may be held liable to First Amendment retaliation employment discrimination under Section 1983. *See DePree*, 588 F.3d at 288. Thus, they argue that, notwithstanding Judge Lynn's holding that there is a fact issue as to whether Jones's alleged retaliatory motive was a causal factor in McKinney's final decision, Jang cannot be liable independently if he did not make the final decision to terminate Plaintiff. *See* Dkt. No. 108 at 7-8, 9-10; *see also DePree*, 588 F.3d at 288; *Johnson*, 369 F.3d at 831. To impute liability to Jang under the so-called "cat's paw" theory, Plaintiff must submit evidence sufficient to establish two conditions: (1) that he exhibited retaliatory animus and (2) that he "possessed leverage, or exerted influence, over the titular decision-maker." *DePree*, 588 F.3d at 288.

Plaintiff admits that, "[f]or termination, the final decision-maker is McKinney," but he argues that, "for other adverse actions, the final decision-makers are the persons who made the final decision on the particular adverse action." Dkt. No. 127 at 11; *see also id.* at 3. But the undersigned has already concluded that Plaintiff's Section 1983 claim against Jang, Jones, and McKinney can only survive the qualified immunity defense insofar as Plaintiff's claim is based on his termination.

The Individual Defendants note that "Lemanski and Jang testified (and Evans declined to testify) in the November 2010 termination hearing five months *after* Jones recommended termination." Dkt. No. 108 at 10. The Individual Defendants argue that, "[a]s to the termination, all [Plaintiff] can offer to show leverage and influence is (1) Jones and non-defendant Peer allegedly 'rewarded' Jang (which does not connect either of them to McKinney's decision); (2) Lemanski and Evans each recommended termination (though not to McKinney), and (3) Evans relied on Jang for her June 2010 evaluation of [Plaintiff's] performance (which has not been shown to have been a factor in his termination)." Dkt. No. 132 at 14 (citing Dkt. No. 127 at 38-39).

Plaintiff argues in his renewed summary judgment response that "Lemanski, Evans, and Jang were not [Plaintiff]'s co-workers but, respectively, his third, second, and first supervisors. Each of them adversely acted against [Plaintiff] and exerted influence upward in the decision chain ending with Jones and McKinney for additional adverse actions. McKinney, Jones, Lemanski, and Evans each relied on recommendations by defendants below in the decision chain, ending with Jang, who were improperly motivated." Dkt. No. 127 at 38; *see also id.* at 3 ("These adverse actions separate from termination are relevant to individual liability because although McKinney has the final say on termination of employment, other defendants are responsible for retaliatory acts not only for causing the termination, but also leading up to and after the termination.").

But Plaintiff's briefing offers no real argument, much less evidence, that Jang possessed leverage, or exerted influence, over Jones or McKinney with regard to

Plaintiff's termination. *See id.* at 37-39. Tellingly, his briefing asks the Court to focus on Plaintiff's argument that, with regard to this issue, the Individual Defendants mistakenly "continue to argue as though termination was the only adverse and retaliatory action that mattered." *Id.* at 39. But the undersigned has concluded that termination is the only adverse employment action as to which Plaintiff's First Amendment claim can survive summary judgment on the qualified immunity defense. Plaintiff's evidence of Jang's interaction with Jones otherwise appears to be limited to an email in which, according to Plaintiff, "Jang wrote to Jones putting the word investigation in quotation marks and alluding to a deal with Jones" to catch "the bigger fish," which Plaintiff infers is a reference to Plaintiff. Dkt. No. 81 at 22; *see also* Dkt. No. 82 at 20; Dkt. No. 127 at 39. Plaintiff also asserts that, "[a]fter this sham investigation – Jang put the word in quotation marks – Jones and Peer did not discipline Jang but rewarded him." Dkt. No. 127 at 39. Even if true, those factual assertions would not establish that Jang possessed leverage or exerted influence over Jones or McKinney with regard to Plaintiff's termination.

Plaintiff "points to no evidence that [Jang] had leverage over or influence on ... any ultimate decisionmaker." *Gonzales v. Dupont Powder Coatings USA, Inc.*, ___ F. App'x ___, 2013 WL 5977600, at *2 (5th Cir. Apr. 22, 2013). "Regardless of any evidence of retaliatory animus, [Plaintiff has] offered no evidence that [Jang] exerted influence over [Jones or McKinney] in such a way as to co-opt [Jones's] decision making," much less McKinney's final decision making. *DePree*, 588 F.3d at 288. Plaintiff has come forward with no evidence to establish a genuine dispute of material fact as to whether

Jang possessed leverage or exerted influence over the final decisionmaker that led to Plaintiff's termination.

The undersigned recommends that Defendants' renewed motion for summary judgment on Plaintiff's First Amendment retaliation claim brought under Section 1983 should be granted.

B.    Grounds for summary judgment as to Title VII retaliation claim not previously reached

To establish his *prima facie* case of retaliation under Title VII, Plaintiff must show: (1) that he engaged in activity protected by Title VII; (2) that he suffered an adverse employment action; and (3) that a causal link existed between the protected activity and the adverse employment action. *See Aryain*, 534 F.3d at 484; *McCoy*, 492 F.3d at 556; *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 471 (5th Cir. 2002). The *McDonnell Douglas* burden-shifting framework applies to retaliation claims. *See McCoy*, 492 F.3d at 556. Even if Plaintiff has established the causal link required to make out a *prima facie* case, where the defendants have offered a legitimate, nondiscriminatory reason for the adverse action, Plaintiff "must establish that his ... protected activity was a but-for cause of the alleged adverse action by the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534 (2013); *Feist v. La., Dept. of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 454-55 (5th Cir. 2013).

Defendants' renewed summary judgment motion, however, presents their arguments regarding Plaintiff's Title VII and Section 1983 retaliation claims together, although they argue (correctly) that the Title VII claim must be decided without regard

to the Individual Defendants' qualified immunity defense. *See* Dkt. No. 108 at 7; Dkt. No. 132 at 2-15. In so doing, they fail to sufficiently brief the elements of Plaintiff's Title VII retaliation claim, which—however much it may overlap in its factual basis with his First Amendment claim—is subject to different standards than the Section 1983 retaliation claim and which Plaintiff himself distinguishes from his First Amendment retaliation claim. *See* Dkt. No. 127 at 35 ("Because many of [Plaintiff's] acts are protected by both Title VII and the First Amendment, [Plaintiff] uses some, but not nearly all, of the facts in both retaliation claims. The two claims overlap partly, not completely.").

1.    *Title VII protected activity*

To begin with, as noted above, the first element depends upon a showing that Plaintiff engaged in activity protected by Title VII, rather than by the First Amendment. *See McCoy*, 492 F.3d at 556. But Defendants' summary judgment briefing does not clearly address whether Plaintiff's Title VII claim fails as a matter of law regarding the requirement that Plaintiff engaged in activity protected by Title VII. In that regard, Defendants explain that Plaintiff's "Title VII retaliation claim against the university ... alleges the same protected activity and the same retaliatory acts" and that "[t]he alleged protected speech for Kostic's § 1983 First Amendment retaliation claim includes his complaints of religious discrimination and of subsequent reprisals therefor, on which his Title VII claim is based, as well as other speech, such as his remarks about laboratory safety." Dkt. No. 108 at 7 & n.4 (footnote omitted). Defendants also assert that Plaintiff's "February 2010 EEOC charge was protected by

Title VII from retaliation only insofar as it accused Jang of Title VII violations" and

that, "[t]o the extent that the charge complained of 'religious influence in TAMUC

curriculum [] and public, religious ceremonies at TAMUC conducted by top TAMUC

officials' (doc. 127 at 17), it is not protected by Title VII." Dkt. No. 132 at 3 & n.2. In

their original summary judgment reply brief, incorporated by reference in their

renewed motion, Defendants asserted only that "'oral complaints concerning Jones's

acts of January 16 and April 9, 2009'" (doc. 40 ¶ 131) are not protected by Title VII's

anti-retaliation provision because, while allegedly expressing church-state separation

issues, they did not assert or describe employment discrimination." Dkt. No. 62 at 1-2;

*see also* Dkt. No. 61 at 48. But Defendants otherwise briefed their renewed summary

judgment motion as if the Court's analysis should not distinguish between what is

protected under the First Amendment and Title VII. *See, e.g.*, Dkt. No. 132 at 2.

Under these circumstances, particularly where Judge Lynn's order, by its terms,

narrowly permitted a second summary judgment motion on the immunity defenses,

and where Defendants have so sparsely addressed and insufficiently briefed the issue

of Title VII-protected activity, the undersigned recommends that there is no basis to

grant summary judgment on the protected activity element of Plaintiff's Title VII

claim. *Cf. Petrie*, 904 F. Supp. 2d at 585 ("Defendants have not fully briefed the issue

of causation, and the Court finds that they have not definitively disproven it as a

matter of law.").

2.     *Adverse employment action*

Defendants' renewed summary judgment briefing does address the standard for

an adverse employment action on a Title VII retaliation claim – which, as explained above, may not apply to the same element on a First Amendment retaliation claim – but Defendants' briefing amounts to little more than conclusory assertions and citations to prior decisions. *See* Dkt. No. 132 at 6-8. *See generally Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 331 (5th Cir. 2009) ("To constitute prohibited [Title VII] retaliation, an employment action must be 'materially adverse,' one that would 'dissuade[ ] a reasonable worker from making or supporting a charge of discrimination.' The purpose of this objective standard is 'to separate significant from trivial harms' and 'filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing.'") (quoting *Burlington*, 548 U.S. at 68; internal citation omitted)). Defendants' renewed summary judgment motion itself does not even raise an argument directed to whether Plaintiff can prove the adverse employment action element of either of his retaliation claims. *See* Dkt. No. 108. But "[w]hether a reasonable employee would view the challenged action as materially adverse involves questions of fact generally left for a jury to decide." *McArdle v. Dell Products, L.P.*, 293 F. App'x 331, 337 (5th Cir. 2008) (citing *Burlington*, 548 U.S. at 71-73). Under these circumstances, the undersigned concludes that Defendants have not fully briefed the issue of materially adverse actions for purposes of the Title VII retaliation claim and that there is no basis to grant summary judgment on the adverse employment action element of Plaintiff's Title VII claim. *See Petrie*, 904 F. Supp. 2d at 585.

-57-

3.    *Causation*

Defendants' renewed summary judgment motion likewise offers no arguments that are specifically addressed to the causation element of Plaintiff's Title VII claim. After the Supreme Court's *Nassar* decision, causation for a Title VII retaliation claim may involve a higher standard for a plaintiff than that which he must satisfy to prevail on a First Amendment retaliation claim under Section 1983. *See Mooney*, 2013 WL 4018662, at *4 n.4. But, outside of a notice of supplemental authority bringing the *Nassar* decision to the Court's attention, *see* Dkt. No. 142, Defendants' renewed summary judgment briefing does not analyze the causation elements of Plaintiff's claims separately, *see* Dkt. No. 108 at 7-9,11-12; Dkt. No. 132 at 8-15.

Even insofar as Defendants may have more clearly distinguished their arguments as to causation for each claim in their original summary judgment briefing, those motions are no longer before the Court. Judge Lynn ordered only that "[t]he new motion and subsequent briefing may be substantially identical to the portions of the briefing on Defendants' original Motion for Summary Judgment directed to the immunity defenses." Dkt. No. 106. Defendants' wholesale citation in their renewed summary judgment motion and reply to large sections of their prior briefing does not substitute for actual arguments that direct the Court to why summary judgment should be granted on Plaintiff's Title VII claim on the renewed motion. This is particularly so where Judge Lynn's order, by its terms, narrowly permitted a second summary judgment motion on the immunity defenses and where the qualified immunity defense admittedly does not apply to Plaintiff's Title VII claim and so does

not function to limit the adverse action at issue on the causation analysis to Plaintiff's termination.

For all these reasons, the undersigned recommends that there is no basis to grant summary judgment on the causation element of Plaintiff's Title VII claim. *See Petrie*, 904 F. Supp. 2d at 585 ("Defendants have not fully briefed the issue of causation, and the Court finds that they have not definitively disproven it as a matter of law.").

The undersigned recommends that Defendants' renewed motion for summary judgment on Plaintiff's Title VII retaliation claim should be denied.

C. Grounds for summary judgment as to defamation claim not previously reached

1. *Whether the defamation claim is barred by the Texas Tort Claims Act*

Defendant Jang first argues that the defamation claim is jurisdictionally barred by the election of remedies provision of the Texas Tort Claims Act. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.106(a). Plaintiff does not address this argument.

The election of remedies provision of the Texas Tort Claims Act confers immunity from suit or recovery, and "[i]mmunity from suit deprives a trial court of jurisdiction." *Maverick Cnty. Hosp. Dist. v. Martin,* 376 S.W.3d 163, 166 (Tex. App. – San Antonio 2012, pet. denied) (citing *Franka v. Velasquez*, 332 S.W.3d 367, 369 (Tex. 2011)). Section 101.106(a) of the Tort Claims Act provides that "[t]he filing of a suit under this chapter against a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against any individual employee of the governmental unity regarding the same subject

matter." TEX. CIV. PRAC. & REM. CODE ANN. § 101.106(a).

Under Texas law, a suit against a government employee in his official capacity is a suit against his government employer with one exception: an action alleging that the employee acted *ultra vires*. *See Franka*, 332 S.W.3d at 382-83. With that exception, an employee sued in his official capacity has the same governmental immunity, derivatively, as his government employer. *See id.* But public employees are individually liable for their own torts, even when committed in the course of employment, and suit may be brought against a government employee in his individual capacity. *Id.* at 383.

Defendant Jang argues that the conduct on which Plaintiff's defamation claim is based all occurred in the course and scope of his employment. However, Judge Lynn has concluded that Defendant Jang failed to adequately develop the evidence of whether Jang was acting within the scope of his employment when he made the allegedly defamatory remarks. Jang also asserts that Plaintiff relies on inadmissible hearsay and that Plaintiff cannot show Jang published a defamatory statement or acted with actual malice. Defendant Jang has failed to come forward with additional evidence or to adequately develop the evidence on these issues, either.

Thus, at least at this stage, the undersigned cannot conclude that Plaintiff's defamation claim against Jang is barred by the Texas Tort Claims Act.

2.    *Whether Defendant Jang enjoys qualified privilege*

Defendant Jang also argues that he is shielded by qualified privilege. *See* Dkt. No. 108 at 17, Dkt. No. 62 at 40-41. Qualified privilege, "which is a Texas common law defense to defamation," is distinct from the affirmative defenses of qualified immunity

to Section 1983 claims and state law "official immunity" as to Texas state law claims. *See McIntosh v. Partridge*, 540 F.3d 315, 326 n.15 (5th Cir. 2008). But, like those defenses, under Texas law, "qualified privilege is an affirmative defense" that must be raised in an answer as required by Rule 8(c). *Id.* at 326. Plaintiff now complains that Jang waived this defense by not including it in his answer, *see* Dkt. No. 127 at 41, but Defendants raised this defense in their original summary judgment motion, *see* Dkt. No. 62 at 40-41, and Plaintiff did not raise waiver in responding to that motion, *see* Dkt. No. 81; Dkt. No. 82 at 32-33. The undersigned recommends that the Court reject this lately-raised waiver argument where Jang raised the issue at a pragmatically sufficient time and Plaintiff has not shown any prejudice in his ability to respond. *See Pasco*, 566 F.3d at 577.

Qualified privilege exists when a communication is made in good faith and the author, the recipient or a third person, or one of their family members, has an interest that is sufficiently affected by the communication. *See Thomas-Smith v. Mackin*, 238 S.W.3d 503, 509 (Tex. App. – Houston [14th Dist] 2007, no pet.) (citing *Cain v. Hearst Corp.*, 878 S.W.2d 577, 582 (Tex. 1994)). Voluntary communications are privileged "if the relationship between the parties is such that it is within generally accepted standards of decent conduct to furnish the information for the protection of the recipient." *Burch v. Coco-Cola Co.*, 119 F.3d 305, 324 (5th Cir. 1997) (citations omitted).

Based on the evidence discussed above, there are genuine disputes of material fact as to whether Jang was acting in good faith concerning the April 11, 2007 memo. Accordingly, the Court should deny summary judgment on Jang's qualified privilege

defense.

## VI.   Defendants' motion to reconsider previously rejected grounds for summary judgment

In their renewed summary judgment motion, Defendants also took the opportunity to reargue two grounds for summary judgment that Judge Lynn already rejected. *See* Dkt. No. 108 at 11-13. The standards for a motion for reconsideration are well known:

> The Federal Rules of Civil Procedure do not specifically provide for motions of reconsideration, and thus a motion for reconsideration will be treated as a motion to alter or amend the judgment under Rule 59(e). A motion for reconsideration "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." Due to its extraordinary nature, Rule 59(e) favors denial of motions to alter or amend a judgment, and relief should only be granted where the movant has presented substantial reasons for reconsideration. To prevail on a motion for reconsideration, the movant must show either that: "(1) the motion is necessary to correct a manifest error of fact or law; (2) the movant presents newly discovered or previously unavailable evidence; (3) the motion is necessary in order to prevent manifest injustice; or (4) the motion is justified by an intervening change in the controlling law."

*United States ex rel. Colquitt v. Abbott Labs.*, 864 F. Supp. 2d 499, 539 (N.D. Tex. 2012) (citations omitted). The undersigned concludes that, although these arguments are beyond the scope of Judge Lynn's order granting Defendants leave "to file a second motion for summary judgment on the remaining claims, based on the defenses of qualified and official immunity," Dkt. No. 106, even treating them as permissibly raised as part of a motion to reconsider, these arguments fail under the governing standard.

First, Defendants argue that Judge Lynn erred in holding that Jang has the

burden to establish his immunity from suit under Section 101.106 of the Texas Tort Claims Act. *See* TEX. CIV. PRAC. & REM. CODE § 101.106(f). But to support this argument, Defendants point to federal law on the burden of establishing qualified immunity. The immunity afforded by Section 101.106 is not qualified immunity. It is an affirmative defense, as to which a defendant bears the burden of proof, *see Kelley v. Chambers Cnty., Tex.*, No. 3:12-CV-00194, 2013 WL 1003455, at *4 (S.D. Tex. Mar. 13, 2013), and it is not subject to a specific exception to that general rule, as is qualified immunity, *see Brumfield v. Hollins*, 551 F.3d 322, 326-27 (5th Cir. 2008) ("Although [qualified immunity is] nominally an affirmative defense, the plaintiff has the burden to negate the defense once properly raised."). Rather, just as with Texas state law common law official immunity, on summary judgment, a defendant must prove all of the elements of a Section 101.106(f) defense, and the Fifth Circuit follows Texas state law in determining who bears the burden of establishing such a defense on summary judgment. *See Dreyer v. Yelverton*, 291 F. App'x 571, 578, 580 (5th Cir. 2008) (official immunity); *Murray v. Earle*, 405 F.3d 278, 294 (5th Cir. 2005) (official immunity).

Apart from this legally mistaken argument, Defendants have not otherwise demonstrated a manifest error of fact or law; newly discovered or previously unavailable evidence; a need to prevent manifest injustice; or any intervening change in the controlling law that would merit or require reconsideration of Judge Lynn's decision.

Second, Defendants argue for reconsideration of Judge Lynn's determination that a fact question exists as to whether or not the Plaintiff was terminated in

retaliation for protected conduct, where the undisputed evidence is that Chancellor McKinney did not rely exclusively on the appeals committee and therefore the issue of whether the committee was independent is irrelevant. Defendants argue that Plaintiff's summary judgment evidence does not create a genuine fact issue of retaliatory motivation as to Jones. The undersigned is recommending that the Individual Defendants be granted summary judgment on Plaintiff's First Amendment retaliation claim but that, for the reasons explained above, summary judgment should not be granted on Plaintiff's Title VII retaliation claim. Defendant's briefing in support of this argument for reconsideration, *see* Dkt. No. 108 at 11-12, which the undersigned considered in the discussion above regarding Plaintiff's Title VII claim, does not change those recommendations.

## Recommendation

Defendants' Second (Renewed) Motion for Summary Judgment [Dkt. No. 108] should be granted in part and denied in part. Defendants' Second (Renewed) Motion for Summary Judgment should be granted as to the Individual Defendants – McKinney, Jones, Lemanski, Evans, and Jang – on Plaintiff's First Amendment retaliation claim. Defendants' Second (Renewed) Motion for Summary Judgment should otherwise be denied as to all other claims and defenses. Defendants' Motion to Strike New Allegations and Evidence in Plaintiff's Response to the Renewed Motion for Summary Judgment [Dkt. No. 129] should be denied.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report

and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: January 17, 2014

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE