IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NENAD M. KOSTIĆ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 3:10-cv-02265-M |
| TEXAS A&M UNIVERSITY AT | § | |
| COMMERCE, ET AL., | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFF'S MOTION FOR JUDGMENT**

Brian P. Sanford
Texas Bar No. 17630700
David B. Norris
Texas Bar No. 24060934

THE SANFORD FIRM
1910 Pacific Ave., Suite 15400
Dallas, Texas  75201
Telephone: (214) 717-6653
Facsimile:  (214) 919-0113
bsanford@sanfordfirm.com
dnorris@sanfordfirm.com

**ATTORNEYS FOR PLAINTIFF
NENAD KOSTIĆ**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ iv

I.  The judgment should include back pay. ...................................................... 1

II.  The judgment should include prejudgment interest on back pay. ............................... 2

    A.  Prejudgment interest makes a prevailing plaintiff whole,
        and should be awarded in all but exceptional circumstances. ............................... 2

    B.  The amount of prejudgment interest is calculated under state law. ........................ 3

III.  The judgment should include front pay. ..................................................... 4

    A.  The preferred remedy, reinstatement, is infeasible. ................................. 4

    B.  The Court may award front pay in lieu of reinstatement. ................................. 6

    C.  The relevant factors weigh in favor of awarding Kostić
        substantial front pay. ............................................................. 7

    D.  Kostić would have worked at TAMUC until retirement. ................................. 9

    E.  TAMUC ruined Kostić's career. ....................................................... 10

    F.  TAMUC is responsible for ruining Kostić's career. ................................. 11

    G.  Kostić made reasonable efforts to mitigate his damages. ............................... 13

    H.  TAMUC waived affirmative defenses including mitigation of damages. ........... 13

    I.  An award of eight years' front pay is reasonable. ................................. 13

    J.  Kostić continues to seek employment. ............................................. 14

IV.  Front pay should include benefits. ......................................................... 15

V.  Kostić calculates front pay conservatively and transparently. .................................. 16

    A.  Kostić relinquishes income of several kinds. ....................................... 16

    B.  Kostić uses a high discount rate. .................................................. 16

C.  Kostić relies on TAMUC's actual compensation data.......................................... 17

D.  Kostić will pay a large fraction of any award as income tax. ............................. 18

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Albemarle Paper Co. v. Moody,*
  422 U.S. 405 (1975)................................................................................................ 1

*Am. Int'l Trading Corp. v. Petroleos Mexicanos,*
  835 F.2d 536 (5th Cir. 1987) ................................................................................. 3

*Bituminous Cas. Corp. v. Vacuum Tanks, Inc.,*
  75 F.3d 1048 (5th Cir. 1996) ................................................................................. 3

*Burns v. Tex. City Refining, Inc.,*
  890 F.2d 747, 753 n.4 (5th Cir. 1989) ............................................................... 6, 7

*City of Houston v. Wolfe,*
  712 S.W.2d 228 ....................................................................................................... 1

*Culver v. Slater Boat Co.,*
  722 F.2d 114 (5th Cir. 1983) ............................................................................ 16, 17

*Cummings v. Standard Register Co.,*
  265 F.3d 56 (1st Cir. 2001) ................................................................................... 14

*Deloach v. Delchamps, Inc.,*
  897 F.2d 815 (5th Cir. 1990) .................................................................. 4, 6, 7, 14, 16

*Executone Info. Sys., Inc. v. Davis,*
  26 F.3d 1314 (5th Cir. 1994) ................................................................................. 3

*Firefighters v. Stotts,*
  467 U.S. 561 (1983).................................................................................................. 5

*Franks v. Bowman Transp. Co.,*
  424 U.S. 747 (1976).................................................................................................. 6

*Goldstein v. Manhattan Indus., Inc.,*
  758 F.2d 1435 ........................................................................................................... 4

*Hansen v. Cont'l Ins. Co.,*
  940 F.2d 971 (5th Cir. 1991) ................................................................................. 3

*Johnston v. Harris County Flood Control Dist.,*
  869 F.2d 1565 (5th Cir. 1989) .............................................................................. 18

*Jones & Laughlin Steel Corp. v. Pfeifer,*
    462 U.S. 523 (1983) ................................................................................................. 16

*Julian v. City of Houston,*
    314 F.3d 721 (5th Cir. 2002) ..................................................................................... 4

*Junaid v. McHugh,*
    No. 2:11-CV-00226, 2013 WL 321567 (S.D. Tex. Jan. 28, 2013) ........................... 14

*Loeffler v. Frank,*
    486 U.S. 549 (1988) ................................................................................................... 1

*Matthews v. DeSoto,*
    721 S.W.2d 286 (Tex.1986) ...................................................................................... 1

*Maurer v. United States,*
    668 F.2d 98 .............................................................................................................. 12

*Miller v. Raytheon,*
    No. 3:09-cv-440-O, 2013 WL 6838302 (N.D. Tex. Dec. 27, 2013) ....................... 14

*Miller v. Raytheon,*
    716 F.3d 138 (5th Cir. 2013) ................................................................................... 15

*Mota v. Univ. of Tex. Houston Health Sci. Ctr.,*
    261 F.3d 512 (5th Cir. 2001) ................................................................................... 14

*Nassar v. Univ. of Tex. Sw. Med. Ctr.,*
    No. 3:08-CV-1337-B, 2010 WL 4627852 (N.D. Tex. Nov. 3, 2010) ....................... 3

*Nassar* v. *Univ. of Tex. Sw. Med. Ctr.,*
    133 S.Ct. 2517 (2013) .............................................................................................. 12

*Ogden v. Wax Works, Inc.,*
    29 F. Supp. 2d 1003 (N.D. Iowa 1998) *aff'd* 214 F.3d 999 (8th Cir. 2000) ........... 11

*Pa. State Police v. Suders,*
    542 U.S. 129 (2004) ............................................................................................ 12, 13

*Palasota v. Haggar Clothing Co.,*
    499 F.3d 474 (5th Cir. 2007) ................................................................................... 15

*Peques v. Miss. State Employment,*
    899 F.2d 1449 (5th Cir. 1990) ................................................................................... 1

*Pettway v. Am. Cast Iron Pipe Co.*,
  494 F.2d 211 (5th Cir. 1974) *cert. denied*, 439 U.S. 1115 (1979).............................. 1

*Pierce v. Atchison, Topeka and Santa Fe Ry.*,
  65 F.3d 562 (7th Cir. 1995) ...................................................................... 14

*Pollard v. E.I. du Pont de Nemours & Co.*,
  532 U.S. 843 (2001)................................................................................ 6

*Reneau v. Wayne Griffin & Sons, Inc.*,
  945 F.2d 869 (5th Cir. 1991) ............................................................. 6, 7, 13

*Rhodes v. Guiberson Oil Tools*,
  82 F.3d 615 (5th Cir. 1996) ................................................................. 16, 17

*Scott v. Amarillo Heart Group, LLP*,
  No. 2:12-CV-112-J, 2013 WL 1497047 (N.D. Tex. Apr. 10, 2013) ........................ 3

*Shirley v. Chrysler First, Inc.*,
  970 F.2d 39 (5th Cir. 1992) ...................................................................... 14

*Teamsters v. United States*,
  431 U.S. 324 (1977)................................................................................ 1

*Thomas v. Tex. Dep't of Criminal Justice*,
  297 F.3d 361 (5th Cir. 2002) ................................................................... 3, 4

*Tyler v. Bethlehem Steel Corp.*,
  958 F.2d 1176 (2d Cir. 1992).................................................................... 14

*Tyler v. Union Oil Co. of Cal.*,
  304 F.3d 379 (5th Cir. 2002) .................................................................... 15

*United States v. Feola*,
  420 U.S. 671, 685 (1975).......................................................................... 12

*Walsdorf v. Bd. of Comm'rs*,
  857 F.2d 1047 (5th Cir. 1988) ................................................................. 5, 6

*Wesley v. Yellow Transp., Inc.*,
  2010 WL 3606095 (N.D. Tex. Sept.16, 2010)................................................ 3

*West Virginia v. United States*,
  479 U. S. 305 (1987)................................................................................ 1

*Whiting v. Jackson State Univ.,*
    616 F.2d 116 (5th Cir. 1980) ................................................................ 3

*Wood v. Armco, Inc.,*
    814 F.2d 211 (5th Cir. 1987) ................................................................ 1

**Statutes**

42 U.S.C. § 2000e .................................................................................. 4

Tex. Fin. Code § 304.104 ....................................................................... 4

Tex. Fin. Code § 304.003(a) and (c) ...................................................... 3

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NENAD M. KOSTIĆ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 3:10-cv-02265-M |
| TEXAS A&M UNIVERSITY AT | § | |
| COMMERCE, ET AL., | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFF'S MOTION FOR JUDGMENT**

TO THE HONORABLE JUDGE BARBARA M. G. LYNN:

Plaintiff Nenad Kostić moves the Court for entry of judgment on the jury verdict, an award of prejudgment interest on back pay, and an award of front pay against Texas A&M University at Commerce ("TAMUC").

## I.     The judgment should include back pay.

On December 18, 2014, the jury found that TAMUC had retaliated against Kostić for his protected activity under Title VII of the Civil Rights Act of 1964, as amended. The jury awarded $300,000 in back pay, the approximate amount claimed by Kostić based upon his nine-month salary and excluding any benefits or summer salary. The jury did not award damages for either past or future pain and suffering, inconvenience, mental anguish, or loss of enjoyment of life. Kostić requests that the Court enter a judgment for back pay of $300,000, as awarded by the jury.

## II.     The judgment should include prejudgment interest on back pay.

### A.     Prejudgment interest makes a prevailing plaintiff whole, and should be awarded in all but exceptional circumstances.

Kostić is entitled to prejudgment interest. Congress vested broad equitable powers in

Title VII courts "to make possible the 'fashion[ing] [of] the most complete relief possible.'"

*Peques v. Miss. State Employment*, 899 F.2d 1449, 1453 (5th Cir. 1990) (quoting *Teamsters v.*

*United States,* 431 U.S. 324, 364 (1977) and *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 421

(1975)). The measure of relief is that amount necessary to make persons whole or put them in

their rightful place. *Id.* Interest is compensation for the use of funds; it is not awarded as a

penalty against a defendant. *Id.* Under Title VII, interest is an item that "*should be* included in

back pay" to make a victim whole. *Id.* (quoting *Pettway v. Am. Cast Iron Pipe Co.,* 494 F.2d 211,

263 (5th Cir. 1974), *cert. denied,* 439 U.S. 1115 (1979) (emphasis added)). *See also Loeffler v.*

*Frank*, 486 U.S. 549, 558 (1988) (Title VII is a manifestation of Congress's intent to make

persons whole for injuries suffered through past discrimination.); *West Virginia v. United*

*States,* 479 U. S. 305, 310 (1987) (prejudgment interest is an element of complete

compensation). "It merely compensates the plaintiff for being denied the opportunity to invest

and earn interest on the amount of damages." *Wood v. Armco, Inc.*, 814 F.2d 211, 214 (5th Cir.

1987) (quoting *Matthews v. DeSoto,* 721 S.W.2d 286, 287 (Tex.1986).

When the plaintiff prevails, the "defendant's acts required the plaintiff to pursue his

rights in a court of law;" and "prejudgment interest will have the beneficial collateral effect of

expediting the trying and settling of cases." *Wood v. Armco, Inc.,* at 214 n.7 (quoting *City of*

*Houston v. Wolfe,* 712 S.W.2d 228, 230 (Tex.App.–Houston [14th Dist.] 1986, writ ref'd). A

prevailing plaintiff's request for an equitable award of prejudgment interest should be granted

"in all but exceptional circumstances." *Bituminous Cas. Corp. v. Vacuum Tanks, Inc.,* 75 F.3d 1048, 1057 (5th Cir. 1996) (quoting *Am. Int'l Trading Corp. v. Petroleos Mexicanos,* 835 F.2d 536, 541 (5th Cir. 1987)) (applying Texas law). Awarding prejudgment interest to make a party whole applies to a party who has received part of the relief he has sought no less than to the party who has prevailed completely. *See Executone Info. Sys., Inc. v. Davis,* 26 F.3d 1314, 1330 (5th Cir. 1994). A refusal to award prejudgment interest ignores the time value of money. *Scott v. Amarillo Heart Group, LLP,* No. 2:12-CV-112-J, 2013 WL 1497047 at *4 (N.D. Tex. Apr. 10, 2013); *Nassar v. Univ. of Tex. Sw. Med. Ctr.,* No. 3:08-CV-1337-B, 2010 WL 4627852 at *1 (N.D. Tex. Nov. 3, 2010) (Boyle, J.) (citing *Thomas v. Tex. Dep't of Criminal Justice,* 297 F.3d 361, 373 (5th Cir. 2002). The eleventh amendment is not a jurisdictional bar to recovering prejudgment interest against a state university. *See Whiting v. Jackson State Univ.,* 616 F.2d 116, 127 n.8 (5th Cir. 1980). Therefore, including prejudgment interest in the judgment is proper.

**B.      The amount of prejudgment interest is calculated under state law.**

Because Title VII is silent on the issue of prejudgment interest, state law is an appropriate source of guidance. *Scott*, at *4 (citing *Hansen v. Cont'l Ins. Co.,* 940 F.2d 971, 984 (5th Cir. 1991); *see also Wesley v. Yellow Transp., Inc.,* 2010 WL 3606095, *2 (N.D. Tex. Sept.16, 2010) (in Title VII case, "[i]n the absence of a federal statute that establishes the rate of prejudgment interest, state law guides the court's discretion in determining the interest rate"). The Texas Finance Code Sections 304.003(a) and (c) provide that prejudgment interest shall accrue at the rate of five percent per year when the prime rate as published by the Board of Governors of the Federal Reserve System is less than five percent. The prime interest rate for the week of January 20, 2015, is less than five percent.[1] Simple interest on the back pay is $41.10 per day:

---

[1]  http://www.federalreserve.gov/releases/h15/Current.

($300,000  x  0.05 / 365).

Under Title VII, courts generally should calculate interest on past damages based on the date of the adverse employment action. *Thomas v. Tex. Dep't of Criminal Justice,* 297 F. 3d 361, 372 (5th Cir. 2002).  The Texas Finance Code also provides that prejudgment interest may start from the date the lawsuit was filed. *See* TEX. FIN. CODE § 304.104. Kostić filed his lawsuit before he was terminated, but he only requests prejudgment interest from the termination date, December 8, 2010.

The total amount of prejudgment interest is calculated by multiplying $41.10 per day with the number of days from December 8, 2010, to the day before the judgment is rendered. *See* TEX. FIN. CODE § 304.104.

## III.    The judgment should include front pay.

### A.    The preferred remedy, reinstatement, is infeasible.

Reinstatement is generally the preferred remedy for a discriminatory discharge. *Deloach v. Delchamps, Inc.*, 897 F.2d 815, 822 (5th Cir. 1990).[2] The Court must first determine whether reinstatement is feasible. *Julian v. City of Houston*, 314 F.3d 721, 728 (5th Cir. 2002). Kostić included a request for reinstatement in his pleadings. (Doc. 40; pp. 2, 64, 65). Here, reinstatement is not feasible because of the discord and antagonism between the parties. *See Goldstein v. Manhattan Indus., Inc.,* 758 F.2d 1435, 1449 ("discord and antagonism between the parties would render reinstatement ineffective as a make-whole remedy").

---

[2] Retaliation is a form of discrimination. Section 704(a), Title VII's antiretaliation provision, states:

> "It shall be an unlawful employment practice for an employer *to discriminate against* any of his employees or applicants for employment ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a) (emphasis added).

TAMUC is hostile to Kostić, and Kostić distrusts TAMUC. After more than two years of retaliation, including harassment after the termination, and more than four years of litigation, the parties thoroughly dislike each other. Kostić's reinstatement would arouse fresh hostility at TAMUC, where approximately 60 persons were involved in accusing, investigating, disciplining, or firing him. (Admission in Doc. 46, para. 278).

If Kostić is reinstated, then Ben Jang, Bukuo Ni, Qianying Zhang, and Stephen Starnes will become his colleagues in a relatively small chemistry department. Kostić sued Jang, he named Ni and Zhang in his internal complaints and EEOC charge, and he had to rebut accusations by Starnes in internal investigations and in trial. Allan Headley, who collaborated with Jang and testified for TAMUC in trial, is the department head, and would be Kostić's supervisor. Jang and Headley speak of each other as tennis partners. (Pl. Appx 01). Starnes obtained his Ph.D. degree under Headley. Jang and Starnes jointly administer a summer internship. (Pl. Appx 01). Ni and his wife, Zhang, started as Headley's research associate and technician, respectively. Jang as department head promoted them into faculty positions without advertising the positions and considering other candidates. (PX[3] 102; Pl. Appx 01).

Kostić presented evidence of ostracism at trial. He would experience more ostracism upon reinstatement into the close-knit community of his detractors, accusers, and retaliators. (Pl. Appx 01).

Reinstatement is also infeasible because Kostić's position has been filled, and another employee would have to be displaced. The Supreme Court has cautioned against using a remedy that displaces an employee from a position to fill it with the victim of discrimination. *Walsdorf v. Bd. of Comm'rs*, 857 F.2d 1047, 1054 (5th Cir. 1988) (citing *Firefighters v. Stotts,* 467 U.S. 561,

---

[3] The designation PX refers to Plaintiff's Trial Exhibits.

579 (1983)). The Fifth Circuit and other circuits have recognized the award of front pay as an alternative to the bumping of an incumbent employee. *Id.* (citations omitted); *Deloach,* at 822 (disruption of the employment of others by reinstatement is a permissible basis for awarding front pay). *See also Franks v. Bowman Transp. Co.,* 424 U.S. 747, 780-81 (1976) (Burger, J., concurring in part, dissenting in part) (suggesting front pay as an alternative to award of retroactive seniority). "Where possible, we should fashion remedies that serve the purposes of Title VII—remedies that compensate the victims of past discrimination and deter employers from the inclination to discriminate in the future—and, at the same time, avoid tampering with the rights of other employees who did not participate in the discriminatory activity." *Walsdorf,* at 1054.

After Headley stepped down as dean, he became a full professor of chemistry, like Jang. Both full professorships in the chemistry department are filled. Ni was made an assistant professor, and he now teaches specialized courses that Kostić used to teach. Kostić's position has been filled. Kostić's responsibilities have been reassigned. Reinstatement is infeasible.

### B.      The Court may award front pay in lieu of reinstatement.

When reinstatement is not feasible, the Court may award front pay. *Reneau v. Wayne Griffin & Sons, Inc.* 945 F.2d 869, 870 (5th Cir. 1991). Front pay is not an element of compensatory damages subject to the statutory cap; it is awarded in lieu of reinstatement. *Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 848, 854 (2001). The court, not the jury, awards the equitable remedy of front pay. *Reneau,* 945 F.2d at 870.

Calculations of front pay cannot be totally accurate because they are prospective and necessarily speculative in nature. *Deloach,* 897 F.2d at 822; *Burns v. Tex. City Refining,*

*Inc.,* 890 F.2d 747, 753 n.4 (5th Cir. 1989). The courts must employ intelligent guesswork to arrive at the best answer. *Deloach,* 897 F.2d at 822.

### C.     The relevant factors weigh in favor of awarding Kostić substantial front pay.

In awarding front pay, a court "should consider the length of prior employment, the permanency of the position held, the nature of work, the age and physical condition of the employee, possible consolidation of jobs, and the myriad other non-discriminatory factors which could validly affect the possible [plaintiff/defendant] post-discharge employment relationship." *Reneau v. Wayne Griffin & Sons, Inc.,* 945 F.2d 869, 871 (5th Cir. 1991) (A court may choose to conduct further proceedings as it deems necessary to make the required front pay determinations.).[4] Applying these factors to Kostić shows the need for a considerable amount of front pay:

*(1) Length of prior employment.*

TAMUC employed Kostić for 4.5 years.

*(2) Permanency of the position held.*

Kostić was not employed at will. TAMUC and Kostić had a contract for permanent (indefinite) employment; Kostić was a full professor, the highest academic rank; and he had tenure in this rank. (Doc. 187, p. 3, stip. 2; Doc. 46, admissions 1 & 206).

*(3) Nature of the work.*

Kostić's duties consisted of teaching and research. Former students Erica Parker, Tiffany Lee, Penny Stark, Johnathan Bailey, and Charlotte MacInnes testified, and

---

[4]  For a comprehensive survey of factors by circuit, s*ee also Ogden v. Wax Works, Inc.,* 29 F. Supp. 2d 1003, 1015 (N.D. Iowa 1998) (Bennett, J.) *aff'd* 214 F.3d 999 (8th Cir. 2000).

documentary evidence showed, that Kostić was a fine teacher, receiving fine marks from students in official evaluations; (PX 27, 125). Former research associates Amy Davis, MacInnes, and Lee testified, and documentary evidence showed, that Kostić was exceptionally successful as a researcher. He had an external research grant, a rarity at TAMUC, where only a handful of other professors had external grants. (Pl. Appx 01). The granting agency praised Kostić's progress, and renewed his grant.  (PX 60).

*(4) Age and physical condition of the employee.*

At firing, Kostić was a healthy 58-year-old. Now, he is a healthy 62-year-old.  He has been physically exercising since his mid-forties. He recovered from major depressive disorder and anxiety, both caused by TAMUC. (Pl. Appx 01). Drs. Kyle Lloyd and Micky Gautam, David Caldwell, and Kostić himself testified about his severe mental illness caused by TAMUC, and his gradual recovery. Kostić testified about his enjoyment of his professorial work and about long hours he was willingly devoting to it. (Pl. Appx 02).

*(5) Possible consolidation of jobs.*

Texas is the second most populous state in the U.S., and the second by the rate of population growth.[5] Student enrollment at TAMUC has been growing. (Pl. Appx 02). Kostić's position was safe from consolidation.

*(6) other non-discriminatory factors which could validly affect
 the employer/employee relationship*

 Founded in 1889, TAMUC is the fifth longest continuously operating university in Texas.[6]  TAMUC will most likely continue to exist long after Kostić retires.

---

[5]  http://www.census.gov/popest/data/national/totals/2014/NST-EST2014-popchg2010-2014.html
[6]  http://www.tamuc.edu/aboutus/historyTraditions/default.aspx

Kostić was the only member of the chemistry faculty specializing in inorganic

chemistry and biochemistry. The American Chemical Society requires academic

departments to cover these chemical disciplines as a precondition for accreditation. (Pl.

Appx 02).

**D.      Kostić would have worked at TAMUC until retirement.**

Documentary evidence and undisputed testimony by Kostić and Randy McBroom,

Associate Vice-President at TAMUC and a defense witness, showed that Kostić had not been

disciplined in any manner before TAMUC learned of his protected acts; that none of the firing

accusations in 2010 had been raised with Kostić at the time the purported issues arose, in 2006

through 2009; and that none of the accusations used for firing in 2010 had been mentioned in

Kostić's performance evaluations in 2006 through 2009.  No witness had first-hand knowledge

of any misconduct by Kostić.

Undisputed evidence in trial showed that TAMUC had no problems with Kostić until his

protected activity, and would not have acted adversely to Kostić but for his protected activity.

Kostić endured various harassment, proven in trial – reprimands, false accusations, threats,

investigations, suspension, ostracism, police actions, expulsion from campus, and more – from

2008 until 2010, but did not resign. If TAMUC had not fired him, he would have stayed at

TAMUC until he voluntarily retired. (Pl. Appx 02).

After doctoral (Ph.D.) study in Wisconsin and postdoctoral training in California, Kostić

began his first full-time job, at Iowa State University ("ISU"), at the age of 31. Kostić enjoys

steady employment and uninterrupted work. He proved this predilection by staying at ISU for 21

years. (Pl. Appx 02). TAMUC fired Kostić at the age of 58, the prime of Kostić's truncated

career of merely 26 years. If Kostić had worked for 40 years, customary outside academia, he

would have retired at the age of 71. Kostić intended to retire from his second job, at TAMUC, at the age of approximately 75 years. (Pl. Appx 02).

Tenured full professors at TAMUC retire at will, usually in their seventies. (Pl. Appx 02). Professor Jovica Badjić, from Ohio State University, testified, and no one disputed his testimony that tenured chemistry professors tend to retire in their seventies.

### E. TAMUC ruined Kostić's career.

TAMUC falsely accused and illegally fired Kostić in a scandalous manner for his purported "professional incompetence," "moral turpitude," and other misconduct. (PX 58, 67). In trial, however, no witness supported these charges from personal knowledge. On the contrary, defense witnesses Gary Peer, Larry Lemanski, and Jang testified to Kostić's high qualifications, thereby refuting the charge of professional incompetence. Two eminent chemists, Professor Badjić and Professor Steve Granick, from University of Illinois, gave undisputed testimony about Kostić's professional excellence and state, national, and international honors and awards. Six former TAMUC students, named above, and two current TAMUC professors, Gerard Huber and Carlos Bertulani, gave undisputed testimony about Kostić's fine conduct and personal qualities. Among Kostić's witnesses from TAMUC were three on whose behalf TAMUC had falsely accused Kostić. Bertulani and Stark denied accusations made in their name and without their knowledge. Lee denied Starnes's accusation of sexual harassment, which TAMUC had been pushing despite Lee's repeated denials to TAMUC administrators.

Terminating a tenured professor is an extraordinary action in academia. Undisputed testimony by three defense witnesses – former vice-presidents Peer and Lemanski and former dean Christine Evans – established that TAMUC's treatment of Kostić was extreme and rare. Kostic agrees. (Pl. Appx 02). Peer and Evans, both retired, and Lemanski, now a TAMUC

professor in his seventies, long served as administrators and professors at universities

nationwide. Each of these witnesses knows of only one tenured professor expelled from campus

– Kostić – and only one fired – Kostić.

### F.     TAMUC is responsible for ruining Kostić's career.

Kostić spent 21 years in his first job, at ISU. For most of that time, Kostić was a tenured

full professor. (Doc. 187, p. 2, stip. 1). Lemanski testified that professors' resignations for

personal reasons are not uncommon in academia. Kostić agrees. (Pl. Appx 03). His own

experience confirms Lemanski's testimony. Although Kostić's private mistake at ISU became

known, and although he was candid in his job applications in 2005-06, universities nationwide

interviewed him in person for possible hiring as a tenured full professor. Four of the universities

went beyond the interviews and began negotiating with Kostić about possible hiring. (Pl. Appx

03). One of the four, TAMUC, hired Kostić in June 2006 in the top rank, and made him

department head.   Kostić had overcome the mistake at ISU.

Kostić and TAMUC's former vice-presidents Robert Brown and Peer testified that

TAMUC administration had known before hiring Kostić why he had resigned from ISU.

Documents showed that Kostić had been candid about his resignation, that top administrators had

known the reason, and that they ignored repeated reminders about the reason. (PX 2, 126, 157,

167, 211, 265). TAMUC conceded that Kostić had disclosed this reason in his job interview with

Kenneth Ashley (Pl. Appx 08). Ashley was head of the committee that recommended Kostić's

hiring to TAMUC administration. (Pl. Appx 03).

TAMUC acknowledged in closing argument that Kostić "will never again teach

chemistry." (Pl. Appx 07). TAMUC tried to shift the liability for Kostić's predicament from

TAMUC's illegal conduct to lingering Internet publicity about the old Iowa matter, which predated Kostić's employment at TAMUC.

It is well settled, however, that a tortfeasor takes his victim as he finds him. The Supreme Court has held that an offender "takes his victim as he finds him." *United States v. Feola*, 420 U.S. 671, 685 (1975). *See also Maurer v. United States,* 668 F.2d 98, 99–100 (2d Cir. 1981) ("It is a settled principle of tort law that when a defendant's wrongful act causes injury, he is fully liable for the resulting damage even though the injured plaintiff had a preexisting condition that made the consequences of the wrongful act more severe than they would have been for a normal victim. The defendant takes the plaintiff as he finds him."). Title VII borrows from, and incorporates, tort law. *See Nassar* v. *Univ. of Tex. Sw. Med. Ctr.*, 133 S.Ct. 2517, 2525 (2013); *Pa. State Police v. Suders*, 542 U.S. 129, 146 (2004).

TAMUC acknowledged in closing argument that the Internet account of the ISU matter might be false, but will follow Kostić:

> "Now, that doesn't mean it's a true accusation. But any hiring supervisor in his right mind is going to say why take a chance when I've got lots of other qualified applicants. I don't claim that that's fair. That's just the way of the world."

> (Pl. Appx 07).

> "Now, again, it's not a question of these allegations being true."

> (Pl. Appx 08-09).

TAMUC stigmatized Kostić as incompetent and immoral, and fired him. Lemanski testified that professors' resignations from tenured positions for personal reasons are not uncommon. Kostić agrees. (Pl. Appx 03). Defense witnesses Lemanski, Peer, and Evans testified that firing of tenured professors for cause is extremely rare. Kostić had recovered from his Iowa mistake with desirable, permanent employment at TAMUC. Kostić will be suffering for the rest

of his life because TAMUC terminated him in a barely-precedented, scandalous manner. (Pl. Appx 03).

### G.    Kostić made reasonable efforts to mitigate his damages.

A victim has a duty to use such means as are reasonable under the circumstances to avoid or minimize the damages. Plaintiff is required reasonably to stave off avoidable harm. The burden, however, is squarely on the defendant to prove that the plaintiff unreasonably failed to avoid or reduce harm. *Suders,* at 146. *See also Reneau,* at 870. Kostić testified about his many job inquiries and job applications nationwide for four years. Kostić has been telling prospective employers that TAMUC fired him. (PX 159). Kostić has been seeking positions comparable to the one from which TAMUC fired him, and untenured and temporary positions as well. His efforts yielded a single interview by telephone, no interviews in person, and no job offer. (PX 159, 161*).*  TAMUC ruined Kostić's career and earning capacity.

### H.    TAMUC waived affirmative defenses including mitigation of damages.

TAMUC did not plead the affirmative defense of failure to mitigate damages in any of its answers. (Docs. 5, 29, and 46). TAMUC waived its affirmative defense that Kostić had failed in any manner to mitigate his damages. Kostić preserved the argument in the Joint Pretrial Order, Section D(1)(e), listing as a contested issue of law whether TAMUC is entitled to any affirmative defenses that are missing from its pleading. (Doc. 223). TAMUC failed to examine Kostić at trial about his efforts to find employment.  Mitigation, therefore, is not an issue.

### I.    An award of eight years' front pay is reasonable.

Federal district and appellate courts in the Fifth Circuit and other circuits have awarded and upheld various amounts of front pay:

- *Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 44-45 (5th Cir. 1992) (awarded two years of front pay although plaintiff's position ceased to exist after plaintiff's termination);

- *Miller v Raytheon Co.*, No. 3:09-cv-440-O, 2013 WL 6838302, at *14 (N.D. Tex. Dec. 27, 2013) (awarded two and a half years of front pay amounting to $632,327);

- *Junaid v. McHugh*, No. 2:11-CV-00226, 2013 WL 321567, at *2, 4 (S.D. Tex. Jan. 28, 2013) (awarded four years of front pay for 58-year-old plaintiff who enjoyed "relative security" in his position and failed to mitigate damages);

- *Deloach v. Delchamps, Inc.*, 897 F.2d 815, 822 (5th Cir. 1990) (awarded five years of front pay);

- *Pierce v. Atchison, Topeka and Santa Fe Ry.*, 65 F.3d 562, 574 (7th Cir. 1995) (upheld a front-pay award for 10 years where the plaintiff was as "likely as any, and probably more likely than most, to work to retirement if he had the ability to do that");

- *Cummings v. Standard Register Co.*, 265 F.3d 56, 66 (1st Cir. 2001) (upheld a front-pay award for 14 years where the plaintiff was unable to find comparable work despite substantial effort);

- *Mota v. Univ. of Tex. Houston Health Sci. Ctr.*, 261 F.3d 512, 527 (5th Cir. 2001) (upheld a front-pay award for 15 years for a resident alien, an *untenured* professor at a Texas public university who suffered retaliation and sexual harassment, was not fired, and had to take a lower-paying job); and

- *Tyler v. Bethlehem Steel Corp.*, 958 F.2d 1176, 1189 (2d Cir. 1992) (upheld a front-pay award for the remaining 17 years of the plaintiff's work life).

Average and median durations of the awards listed are 8.7 and 7.5 years, respectively. Kostić requests an award for eight years, a period intermediate between the average and median of these awards. These cases show that a lengthy period of front pay is sometimes necessary to make whole someone as extensively harmed as Kostić.

### J.    Kostić continues to seek employment.

Kostić refrains from requesting front pay for the remainder of his work life. Kostić continues to look for a job. Vindication in trial may improve his chances, but a lawsuit against his former employer may worsen his chances. Kostić is 62 years old, and unemployed for the

fifth year. This long hiatus continues to hamper his job search despite his accomplishments and his honors and awards at state, national, and international levels. (Pl. Appx 03).

Colleges and universities hire faculty in yearly cycles, not continuously. Job applications received during most of the year compete for the same set of openings, most of which are filled for the fall semester and some of which are filled for the winter semester. To succeed, undesirable applicants must compete in multiple years. Kostić failed in four yearly cycles. The fifth, current, cycle has been unsuccessful so far. (Pl. Appx 03-04).

Kostić requests eight years' front pay, to continue trying in eight more cycles after the court judgment.


## IV.    Front pay should include benefits.

Front pay compensates the plaintiff "for wages and benefits he would have received from the defendant employer in the future if not for the discrimination." *Palasota v. Haggar Clothing Co,* 499 F.3d 474, 490 (5th Cir. 2007) (quoting *Tyler v. Union Oil Co. of Cal.,* 304 F.3d 379, 402 (5th Cir. 2002)). The award should include not only wages but also benefits that Kostić would have received from TAMUC in the future, but for the retaliation. *See id.* The Fifth Circuit held that past pension benefits must be treated as front pay rather than back pay. *See Miller v. Raytheon,* 716 F.3d 138, 146-47 (5th Cir. 2013).

Because mathematical precision is legally unnecessary, Kostić rounds to whole dollars. TAMUC's yearly contributions to Kostić's benefits in 2009-10, the last year of his employment, were as follows:  $4,801 to a retirement program plus $4,579 to Social Security, or total yearly benefits of $9,380. (PX 169 or 294).

**V.      Kostić calculates front pay conservatively and transparently.**

**A.      Kostić relinquishes income of several kinds.**

Kostić excludes from requested front pay the following portions of salary even though he very likely would have continued receiving this income but for TAMUC's retaliatory firing: (1) summer salary from research grants, which Kostić has been winning throughout his career, including the TAMUC period; (2) merit raises in salary; and  (3) cost-of-living raises in salary.

Kostić also refrains from requesting prejudgment interest on any front pay that the Court may award. *Cf. Deloach*, at 823 (plaintiff is entitled to prejudgment interest on the front pay award that the district court finds appropriate).

**B.      Kostić uses a high discount rate.**

Front pay should be discounted with an appropriate discount rate reflecting the safest available investment. *See Jones & Laughlin Steel Corp. v. Pfeifer*, 462 U.S. 523, 537 (1983). The below-market discount rate method is appropriate to adjust damage awards to account for inflation. *See Culver v. Slater Boat Co.*, 722 F.2d 114, 122 (5th Cir. 1983) (en banc); *Rhodes v. Guiberson Oil Tools,* 82 F.3d 615, 622 n.2 (5th Cir. 1996) ("[A] trial court adopting a pre-tax discount rate between one and three percent will not be reversed so long as the trial court explains its choice.").

Kostić considered the safest available investments – various money-market mutual funds offered by major investment-management companies in the U.S:

| Company | No. & type of money-market funds | Average returns (in %) | |
|---|---|---|---|
| | | 5 years | 10 years |
| Vanguard[7] | three taxable funds | 0.01 – 0.04 | 1.5 – 1.6 |
| Vanguard[7] | six tax-exempt funds | 0.04 – 0.06 | 1.2 all |
| Fidelity[8] | 11 Treasury and government funds | 0.01 – 0.02 | 1.3 – 1.6 |
| Fidelity[8] | eight prime funds | 0.01 – 0.18 | 1.6 – 1.8 |

The Fifth Circuit noted that in an inflation-free economy, the discount rate for front pay should be based on returns from the safest available investments. *Rhodes,* 82 F.3d at 622. Five-year returns in the table would justify a vanishingly small discount rate, beneficial to him, but Kostić refrains from this choice. In *Culver*, the Fifth Circuit decided that a discount rate of 1 to 3 percent would not be reversed. *Culver*, 722 F.2d at 122. Therefore Kostić chooses a discount rate of three percent, beneficial to TAMUC. This percentage exceeds the return Kostić can expect from safely investing a lump-sum front pay.

### C.   Kostić relies on TAMUC's actual compensation data.

Kostić uses his actual salary and benefits in 2010, the last year of his employment. Kostić's base nine-month salary was $75,020, rounded down to $75,000; his retirement benefits were $9,380; and his compensation, the sum of salary and retirement benefits, was $84,380. (PX 294).

---

[7] https://investor.vanguard.com/mutual-funds/vanguard-mutual-funds-list?assetclass=mm

[8] http://fundresearch.fidelity.com/mutual-funds/category-performance-annual-total-returns/TGMM

Because mathematical precision is legally unnecessary, Kostić rounds to whole dollars. For the sake of transparency, Kostić makes yearly discount calculations rather than using a shorthand formula for present value. Each yearly amount is 0.97 times the previous yearly amount. Each cumulative amount is the sum of the previous cumulative amount and the current yearly amount.

|  | **Without retirement contribution** | | | **With retirement contribution** | |
|---|---|---|---|---|---|
| Year | Yearly | Cumulative | | Yearly | Cumulative |
| First | 75,000 | 75,000 | | 84,380 | 84,380 |
| Second | 72,750 | 147,750 | | 81,849 | 166,229 |
| Third | 70,567 | 218,317 | | 79,393 | 245,622 |
| Fourth | 68,450 | 286,767 | | 77,011 | 322,633 |
| Fifth | 66,396 | 353,163 | | 74,701 | 397,334 |
| Sixth | 64,404 | 417,567 | | 72,460 | 469,794 |
| Seventh | 62,472 | 480,039 | | 70,286 | 540,080 |
| Eighth | 60,598 | 540,637 | | 68,177 | 608,257 |

**D.     Kostić will pay a large fraction of any award as income tax.**

Any award to Kostić under Title VII will be subject to federal income tax. *Johnston v. Harris County Flood Control Dist.*, 869 F.2d 1565, 1580 (5th Cir. 1989). Significantly, the entire award will be taxed at the highest rate. Kostić will pay far more in income taxes for the lump sum than he would have paid if TAMUC had refrained from retaliation, and Kostić's regular income had continued to be taxed at a lower rate year by year. The increased tax liability is an

additional loss that TAMUC will indirectly inflict on Kostić. Ironically, prevailing in court will cost Kostić dearly.

WHEREFORE, Kostić requests that the court enter a judgment on the verdict, together with awards of prejudgment interest, front pay, and any other relief to which Kostić is entitled.

Respectfully submitted,

   */s/  Brian P. Sanford*
Brian P. Sanford
Texas Bar No. 17630700
David B. Norris
Texas Bar No. 24060934

THE SANFORD FIRM
1910 Pacific Ave., Suite 15400
Dallas, Texas  75201
Telephone: (214) 717-6653
Facsimile:  (214) 919-0113
bsanford@sanfordfirm.com
dnorris@sanfordfirm.com

**ATTORNEYS FOR PLAINTIFF
NENAD KOSTIĆ**

## CERTIFICATE OF SERVICE

On January 22, 2015, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all counsel of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

   */s/ Brian P. Sanford*