## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| NENAD M. KOSTIC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3:10-cv-2265-M |
| | § | |
| TEXAS A&M UNIVERSITY AT | § | |
| COMMERCE, | § | |
| | § | |
| Defendant. | § | |

### MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff's Motion for Judgment [Docket # 246].  For the reasons stated below, the Motion is **GRANTED**.

### I.     FACTUAL BACKGROUND

On December 18, 2014, the jury returned its verdict, finding that Defendant Texas A&M University at Commerce ("TAMUC") retaliated against Plaintiff Nenad Kostic ("Kostic") for engaging in protected activity under Title VII of the Civil Rights Act of 1964.  The jury awarded Kostic $300,000 in back pay from the period of December 9, 2010, to the date of the jury's verdict, December 18, 2014. [Docket #241, p. 11].  The jury declined to award Kostic damages for past or future pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life.  The jury also made a non-binding finding that Kostic was not entitled to front pay.  [Docket #241, p. 8-9].  Kostic's Motion for Judgment requests that the Court award Kostic $300,000 in back pay in accordance with the verdict, and that it additionally award Kostic prejudgment interest and front pay.

## II.    PREJUDGMENT INTEREST ON BACK PAY

TAMUC does not contest the Court's award of back pay to Kostic in the amount of $300,000.  However, the parties disagree about prejudgment interest.  The Court finds that Kostic is entitled to prejudgment interest.  *Thomas v. Texas Dep't of Criminal Justice*, 297 F.3d 361, 372 (5th Cir. 2002) ("Courts should award prejudgment interest whenever a certain sum is involved" . . .  "[r]efusing to award prejudgment interest ignores the time value of money and fails to make the plaintiff whole.")

### A.  The Date Prejudgment Interest Should Begin to Accrue on Kostic's Back Pay Award

TAMUC contends that prejudgment interest accrues from February 1, 2011, not December 9, 2010.  Kostic and TAMUC appear to agree that Kostic was officially terminated on December 8, 2010.[1]  TAMUC urges, however, that Kostic admitted he was paid through the following January, but cites no record evidence in support of that assertion.  Def.'s Rsp. to Pl.'s Mot. Judgment, p. 1 [Docket #249].  Based on the evidence before it, the Court concludes that prejudgment interest should begin accruing on December 9, 2010.  *See Thomas*, 297 F.3d at 371 ("District courts generally should calculate interest on back pay and past damages based on the date of the adverse employment action.").

### B.  The Amount and Rate of Prejudgment Interest

TAMUC argues that any prejudgment interest award should be reduced by $2,000, because Kostic only asked for $298,000 in back pay, but the jury awarded Kostic $300,000.  TAMUC cites no authority in support of its request to effectively reduce the jury's award of back pay by reducing the amount of prejudgment interest.  Awarding back pay is not an exact science,

---

[1] TAMUC explains that "the chancellor's decision to ratify the termination was made on December 8, 2010." Def.'s Rsp. Pl's Mot. Judgment, p. 6 [Docket #249].  Kostic states that the termination date was December 8, 2010.  Pl.'s Mot. Judgment, p. 11 [Docket #246].

and can include compensation in addition to the loss of salary, including overtime, shift differentials, fringe benefits, and interest. *Dibler v. Metwest, Inc.*, No. 3:95-CV-1046-BC, 1997 WL 222910, at *1 (N.D. Tex. Apr. 29, 1997) (Boyle, J.). Determining back pay involves "inherent uncertainties" that must be "resolved against the discriminating party." *Id.* Furthermore, "the jury is free to select the highest figures for which there is adequate evidentiary support." *Mercado–Berrios v. Cancel–Alegria,* 611 F.3d 18, 29 (1st Cir. 2010) (quotation and citation omitted). Here, there was adequate evidentiary support for the jury's award of back pay in the sum of $300,000. Accordingly, the Court will not reduce the amount of prejudgment interest due to the jury's back pay determination.

Where an action arises under federal law, "it is within the discretion of the district court to set an equitable rate of prejudgment interest." *Hansen v. Continental Ins. Co*, 940 F.2d 971, 984 (5th Cir. 1991); *Scott v. Amarillo Heart Grp., LLP*, No. 2:12-CV-112-J, 2013 WL 1497047, at *4 (N.D. Tex. Apr. 10, 2013) (Robinson, J.). Where a claim is governed by a federal statute, and the statute is silent on the issue of prejudgment interest, "state law is an appropriate source of guidance." *Hansen*, 940 F.2d 984. *See also Wesley v. Yellow Transp., Inc.*, No. 3:05-CV-2266-D, 2010 WL 3606095, at *2 (N.D. Tex. Sept. 16, 2010) (Fitzwater, J.) ("In the absence of a federal statute that establishes the rate of prejudgment interest, state law guides the court's discretion in determining the interest rate.").

Accordingly, the Court looks to Texas Finance Code 304.003(a) and (c), which provide that prejudgment interest shall accrue at the rate of 5% per year, when the prime rate as published by the Board of Governors of the Federal Reserve System is less than 5%. The prime rate for the week ending August 7, 2015, is less than 5%, so the rate of prejudgment interest this Court will apply is 5%. *See Wesley*, 2010 WL 3606095, at *2 (applying the 5% interest rate).

Therefore, the amount of prejudgment interest per day is $41.10. The number of days that have passed since December 9, 2010, and the date of this Order, August 13, 2015, including December 9, 2010, but not including August 13, 2015, is 1708 days. 1708 multiplied by $41.10 is $70,198.80.

## III.    FRONT PAY

Plaintiff next urges the Court to award Kostic front pay, even though the jury advised that none should be awarded. "Front pay . . . is intended to compensate the plaintiff for wages and benefits he would have received from the defendant in the future if not for the discrimination." *Julian v. City of Houston, Tex.*, 314 F.3d 721, 729 (5th Cir. 2002). Under Title VII, courts have discretion to award front pay as part of their authority to provide "other equitable relief as the court deems appropriate." 42 U.S.C. § 2000e-5 (g)(1). "[F]ront pay is an equitable remedy for the district court to determine, [but] the court may empanel an advisory jury." *Mota v. Univ. of Texas Houston Health Sci. Ctr.*, 261 F.3d 512, 526 (5th Cir. 2001).

### A.  The Feasibility of Reinstatement

Although reinstatement is the preferred remedy, front pay may be awarded if reinstatement is not feasible. *Nassar v. Univ. of Texas Sw. Med. Ctr.*, No. 3:08-CV-1337-B, 2010 WL 3633631, at *2 (N.D. Tex. Sept. 16, 2010) (citing *Reneau v. Wayne Griffin & Sons, Inc.*, 945 F.2d 869, 870 (5th Cir. 1991)). Here, the parties agree that reinstatement is not feasible because a hostile relationship existed between Kostic and TAMUC. *See Mota v. Univ. of Texas Houston Health Sci. Ctr.*, 261 F.3d 512, 526 (5th Cir. 2001) (reinstatement infeasible in light of "hostile relationship"). During the trial, the Court heard substantial evidence that the relationship between Kostic and TAMUC was deteriorating before Kostic began to engage in protected activity, and that throughout the course of Kostic's termination proceedings and

4

subsequent litigation, the relationship worsened.  The Court concludes that reinstatement would not be feasible in this case.

### B.  Whether Kostic is Entitled to Front Pay

Accordingly, the Court turns to the alternative remedy of front pay.  It is within the discretion of the Court to determine whether to award front pay.  *Downey v. Strain*, 510 F.3d 534, 544 (5th Cir. 2007).   Front pay is calculated by the Court "through intelligent guesswork," and due to its "speculative character," district courts are given "wide latitude" in determining whether it should be awarded, and if so, in what amount.  *Id*.  The Fifth Circuit has listed six factors for a trial court to consider in determining the amount of a front pay award: "(1) the length of prior employment, (2) the permanency of the position held, (3) the nature of the work, (4) the age and physical condition of the employee, (5) possible consolidation of jobs, and (6) the myriad of other non-discriminatory factors which could validly affect the employer/employee relationship."  *Downey*, 510 F.3d at 544.

Although front pay is "usually appropriate when a plaintiff is discharged in violation of ADEA and not reinstated by the court," *Reneau v. Wayne Griffin & Sons, Inc.*, 945 F.2d 869, 870 (5th Cir. 1991), TAMUC urges the Court to deny Kostic front pay because Kostic would have been fired from his job anyway, for nondiscriminatory reasons.  The Court concludes that the evidence does not support that conclusion.

TAMUC did present evidence that Kostic's relationships with other faculty members and students became strained when they learned that Kostic had been forced to resign, in lieu of termination, from his previous job at Iowa State University, and that Kostic's personal relationships with many TAMUC students and faculty members had deteriorated due to his approach to his position.  However, the Court cannot conclude that the extreme measure of

5

revocation of Kostic's tenure would have occurred due to such friction.  TAMUC did not show that Kostic's behavior at TAMUC was so egregious as to support revocation.  *See McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352, 363-63 (1995) (the defendant must "establish that the wrongdoing was of such a severity that the employee in fact would have been terminated on those grounds alone").

Nor can TAMUC claim that Kostic falls under the "after-acquired evidence" exception to an award of front pay.  In *McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352 (1995), the Supreme Court held that a defendant may use evidence of a plaintiff's wrongdoing, acquired after the date of plaintiff's wrongful termination, to prove that the plaintiff would have been fired anyway.  *Id.* at 362.  Insofar as TAMUC claimed that Kostic failed to disclose his history at Iowa State during the hiring process, and that TAMUC would have fired him based on this failure to disclose, the evidence at trial was to the contrary.  The Court heard testimony that before TAMUC hired Kostic, Kostic disclosed his history at Iowa State to certain TAMUC employees.  Furthermore, information about Kostic's past at Iowa State was publicly available on the Internet, obtainable through a simple Google search.  TAMUC cannot claim it had no knowledge of Kostic's past, nor that Kostic hid his wrongdoing from TAMUC during the hiring process and that the later discovery of it would have independently justified and caused Kostic's termination, nor did TAMUC prove other reasons why that could have occurred.

Courts have also denied front pay where the plaintiff failed to mitigate his damages or where the plaintiff received large enough punitive or liquidated damages to render front pay excessive.  Neither circumstance is present here.  First, Kostic testified, and the Court found his testimony credible, that since he was fired, he has been engaged in an exhaustive search for alternative employment.  Kostic has been unsuccessful in that search, but a plaintiff does not

have to actually find another job to have successfully attempted mitigation. *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 394 (5th Cir. 2003). Second, the Court may not limit Kostic's front pay award on the basis of a back pay award. Courts have denied front pay when a plaintiff recovers a significant amount of liquidated or punitive damages. *See Walther v. Lone Star Gas Co.*, 952 F.2d 119, 127 (5th Cir. 1992). Here, there was no such award, and the Fifth Circuit has "never held that an award of back pay can have this same effect" of negating front pay. *Julian v. City of Houston, Tex.*, 314 F.3d 721, 730 (5th Cir. 2002) (reversing district court's decision to deny front pay based solely on plaintiff's back pay award). Accordingly, the Court finds that an award of front pay is required by the facts of this case.

### C.  The Amount of Kostic's Front Pay Award

Turning to the amount of front pay to be awarded, the Court concludes that Kostic should be awarded front pay corresponding to two additional years of lost employment, based on the application of the Fifth Circuit's six-factor test. *See Downey*, *supra*, at p.5. Considering "the myriad of non-discriminatory factors which could validly affect the employer/employee relationship," as discussed below, the Court concludes that it is a reasonable assumption that Kostic would, for legitimate, non-discriminatory reasons, have been employed at TAMUC for only two additional years after the date of the jury verdict. *Downey*, 510 F.3d at 544.

Although the friction between Kostic and many members of the TAMUC community was caused in part by rumors about Kostic's conduct at Iowa State University, the evidence showed it was also due to Kostic's own inability to accept criticism, his often hostile temperament, and his overly aggressive approach to students and faculty. In light of those issues, and how they were regarded by others and considered by Kostic, the Court finds it highly probable that Kostic would not have willingly remained at TAMUC for more than two additional years after the date

of the jury verdict.

For each year of front pay, Kostic would receive $84,380, comprised of the sum of (1) a base rounded salary of $75,000, and (2) the value of retirement benefits totaling $9,380.  *See Plaintiff's Trial Exhibit 294.*  Those sums are subject to an appropriately applied discount rate, yielding a total of $166,229 in front pay to be awarded to Kostic.

## IV.     CONCLUSION

Accordingly, Plaintiff's Motion for Judgment is **GRANTED**.  A separate judgment will issue.

**SO ORDERED**.

August 13, 2015.

**BARBARA M. G. LYNN**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF TEXAS**