IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NENAD M. KOSTIĆ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:10-cv-2265-M |
| | § | |
| TEXAS A&M UNIVERSITY-COMMERCE, | § | |
| | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff Nenad M. Kostić has filed a Motion for Reasonable Fees and Costs, *see* Dkt. No. 264, which United States District Judge Barbara M. G. Lynn has referred to the undersigned United States magistrate judge for recommendation, *see* Dkt. No. 274.

Defendant Texas A&M University at Commerce ("Defendant") filed a response, *see* Dkt. No. 270, and Plaintiff filed a reply, *see* Dkt. No. 276. Plaintiff also has filed a supplemental motion to seek attorneys' fees incurred after the original motion was filed, *see* Dkt. No. 277, to which Defendant filed a response, *see* Dkt. No. 279, and Plaintiff filed a reply, *see* Dkt. No. 280.

The undersigned now issues the following findings of fact, conclusions of law, and recommendation that Plaintiff's Motion for Reasonable Fees and Costs [Dkt. No. 264, as supplemented by Dkt. No. 277] should be granted in part and denied in part.

## Background

The parties are familiar with this case's pertinent factual background, which the Court has recounted elsewhere and will only briefly summarize here. *See, e.g.*, Dkt. Nos. 151 & 259.

On December 18, 2014, the jury returned its verdict, finding that Defendant Texas A&M University at Commerce retaliated against Plaintiff for engaging in protected activity under Title VII of the Civil Rights Act of 1964. The jury awarded Plaintiff $300,000 in back pay from the period of December 9, 2010, to the date of the jury's verdict, December 18, 2014. *See* Dkt. No. 241 at 11. The jury declined to award Plaintiff damages for past or future pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life. The jury also made a non-binding finding that Plaintiff was not entitled to front pay. *See id.* at 8-9.

On August 13, 2015, the Court granted Plaintiff's Motion for Judgment [Dkt. No. 245], awarding Plaintiff prejudgment interest on his back pay award as well as front pay in the amount of $166,229.00, and entered judgment in Plaintiff's favor, taxing costs against Defendant. *See* Dkt. Nos. 259 & 260.

Plaintiff then filed a Federal Rule of Civil Procedure 54(d)(2) motion on September 17, 2015, seeking a postjudgment award of costs, including attorneys' fees under 42 U.S.C. § 2000e-5(k) and costs under 28 U.S.C. § 1920. Between his original motion and supplemental motion, Plaintiff seeks $542,181.25 in attorneys' fees and $62,551.93 in costs, for a total of $604,733.18, plus postjudgment interest. *See* Dkt. Nos. 264 & 277. Defendant objects to the amount of attorneys' fees sought by Plaintiff

but not to the requested court costs or postjudgment interest. *See* Dkt. Nos. 270 & 279.

The undersigned now concludes that Plaintiff's fee request should be granted in part and denied in part and that, without objection, Plaintiff's request for Section 1920 costs should be granted.

## Legal Standards

In any suit brought pursuant to Title VII of the Civil Rights Act, the Court, in its discretion, may award the prevailing party reasonable attorneys' fees (including expert fees) as part of the costs. *See* 42 U.S.C. § 2000e-5(k). Reasonable attorneys' fees are calculated through a two-step process called the lodestar method. *See Hensley v. Eckerhardt*, 461 U.S. 424, 432 (1983); *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 323-24 (5th Cir. 1995). The lodestar is calculated by multiplying the number of hours that an attorney reasonably spent on the case by an appropriate hourly rate, which is the market rate in the community for this work. *See Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 490 (5th Cir. 2012). When an attorneys' requested hourly "rate is not contested, it is *prima facie* reasonable." *Islamic Ctr. of Miss., Inc. v. City of Starkville*, 876 F.2d 465, 469 (5th Cir. 1989).

The party seeking reimbursement of attorneys' fees bears the burden of establishing the number of hours expended through the presentation of adequately recorded time records as evidence. *See Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). The Court should use this time as a benchmark and then exclude any time that is excessive, duplicative, unnecessary, or inadequately documented. *See id.* "It is impermissible, however, to eliminate wholesale the services of attorneys without

identifying the particular services which are regarded as duplicative." *Tasby v. Estes*, 651 F.2d 287, 289-90 (5th Cir. Unit A July 1981) (internal quotation marks omitted). But "[p]ercentage reductions are appropriate when attorneys impermissibly engage in block billing or fail to exercise billing judgment" – including by failing to write off time spent on work that was redundant and in hindsight may have been unnecessary – or "when a court reduces excessive time spent on particular legal services" or for particular services that are "duplicative." *Fralick v. Plumbers & Pipefitters Nat'l Pension Fund*, No. 3:09-cv-752-D, 2011 WL 487754, at *13 (N.D. Tex. Feb. 11, 2011); *Shepherd v. Dallas Cty., Tex.*, No. 3:05-cv-1442-D, 2009 WL 977294, at *2 n.3 (N.D. Tex. Apr. 10, 2009); *accord Cookston v. Freeman, Inc.*, No. 3:98-cv-2106-D, 1999 WL 714760, at *5 (N.D. Tex. Sept. 14, 1999).

The hours remaining are those reasonably expended. *See Watkins*, 7 F.3d at 457. There is a strong presumption of the reasonableness of the lodestar amount. *See Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010); *Saizan v. Delta Concrete Prods. Co., Inc.*, 448 F.3d 795, 800 (5th Cir. 2006).

After calculating the lodestar, the Court may either (1) accept the lodestar figure or (2) decrease or enhance it based on the circumstances of the case, taking into account what are referred to as the *Johnson* factors. *See La. Power & Light*, 50 F.3d at 324, 329; *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *overruled on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 90 (1989).

The undersigned recognizes that the analysis set forth above, and particularly the interplay of the lodestar analysis and the *Johnson* factors, has recently been called

-4-

into question. *See Perdue*, 559 U.S. at 552-53; *Perez v. Bruister*, Nos. 3:13cv1001-DPJ-FKB & 3:13cv1081-DPJ-FKB, 2015 WL 5712883, at *5-*6 (N.D. Miss. Sept. 29, 2015); *Alex v. KHG of San Antonio, LLC*, No. 5:13-cv-0728 (RCL), ___ F. Supp. 3d ____, 2015 WL 5098327, at *1 (W.D. Tex. Aug. 28, 2015); *S&H Indus., Inc. v. Selander*, No. 3:11-cv-2988-M-BH, 2013 WL 6332993, at *2-*3 (N.D. Tex. Dec. 5, 2013). But in a recent opinion, the United States Court of Appeals for the Fifth Circuit, without comment or reference to the United States Supreme Court's decision in *Perdue*, continued to utilize the approach laid out above. *See Black v. SettlePou, P.C.*, 732 F.3d 492, 502-03 (5th Cir. 2013); *see also Alex*, 2015 WL 5098327, at *1 ("The *Perdue* Court clearly indicated a preference for the lodestar method over the Fifth Circuit's factors, and the Fifth Circuit has subsequently treated the *Johnson* factors as a complement to the lodestar method." (citing *Ransom v. M. Patel Enters., Inc.*, 734 F.3d 377, 388 n. 17 (5th Cir. 2013); *Black*, 732 F.3d at 502)). *But see In re Pilgrim's Pride Corp.*, 690 F.3d 650, 663-64 (5th Cir. 2012) (analyzing whether any changes brought about by *Perdue* apply to bankruptcy attorneys' fees calculations); *but see also In re ASARCO, L.L.C.*, 751 F.3d 291, 296 (5th Cir. 2014) (following *Pilgrim's Pride*).

In *Perdue*, the Supreme Court was ultimately considering the appropriateness of an enhancement of an award of attorneys' fees, and Plaintiff here has not requested such an enhancement. Other factors also distinguish this case from *Perdue*, including the fact that *Perdue* involved a 42 U.S.C. § 1988 claim and the fees were therefore paid by state and local taxpayers. *See Perdue*, 559 U.S. at 558. Moreover, after the lodestar amount is determined, it may not be adjusted due to a *Johnson* factor that was already

taken into account during the initial calculation of the lodestar, *see Saizan*, 448 F.3d at 800, and the lodestar calculation may take into account several *Johnson* factors, *see Black*, 732 F.3d at 503 n.8; *see also Alex*, 2015 WL 5098327, at *1 ("However, a court may not adjust the award on the basis of any factor already accounted for in calculating the lodestar").

In light of the circumstances in this case – where there is no request for enhancement and no Section 1988 claim – the undersigned will not address whether *Perdue* changed the landscape of calculating attorneys' fees awards in the Fifth Circuit. Rather, the Court should take into account the necessary factors when determining the appropriate amount of attorneys' fees.

## Analysis

Plaintiff seeks a total of $542,181.25 in attorneys' fees and $62,551.93 in costs.

Plaintiff seeks $420,732.00 for work done by his lead counsel, Brian P. Sanford, for 637.28 hours at an hourly billing rate of $650.00 ($414,232.00) for work done prior to the filing of the original motion for fees and 10 hours at an hourly billing rate of $650.00 ($6,500.00) for work done after the original motion was filed. Mr. Sanford has over 29 years of experience, with an emphasis on civil rights employment litigation, and is board certified in both labor and employment law and civil trial law. When he began representing Plaintiff, Mr. Sanford was with the firm of SanfordBethune. He started his own firm, The Sanford Firm, during the pendency of this case. *See* Dkt. No. 264 at 2; Dkt. No. 266-1 at 1-12 (Declaration of Brian P. Sanford); Dkt. No. 266-3 at 46 (Declaration of David L. Wiley); Dkt. No. 266-3 at 54 (Declaration of Hal K. Gillespie);

Dkt. N0. 266-3 at 64-65 (Declaration of Rod Tanner); Dkt. No. 277 at 2.

Mr. Sanford declares that he and the associates working with him contemporaneously recorded time and described the work done. He attaches billing records to his declaration to support Plaintiff's request for attorneys' fees and bills of cost, invoices, and other documentation to support the costs incurred by his firms. *See* Dkt. No. 266-1 at 13-14 (Declaration of Brian Sanford); Dkt. No. 266-2 at 1-72.

Plaintiff seeks $98,931.25 for work done by David B. Norris, an associate licensed to practice law in 2011 and former law clerk at The Sanford Firm, for 395.525 hours at an hourly rate of $250.00 ($98,881.25) for work done prior to the filing of the original motion for fees, 0.20 hours at an hourly rate of $250.00 ($50.00) for work done after the original motion was filed, and 11.025 hours of work done at an hourly rate of $100.00 ($1,102.50) as a law clerk before he was licensed to practice law. *See* Dkt. No. 264 at 2; Dkt. No. 266-1 at 4 (Declaration of Brian Sanford); Dkt. No. 266-3 at 48 (Declaration of David L. Wiley); Dkt. No. 266-3 at 57 (Declaration of Hal K. Gillespie); Dkt. No. 277 at 2.

Plaintiff seeks $4,374.00 for work done by Ashley E. Tremain, an associate at SanfordBethune who was licensed to practice law in 2008, for 19.44 hours of work at an hourly rate of $225.00. *See* Dkt. No. 264 at 2; Dkt. No. 266-1 at 4 Declaration of Brian Sanford); Dkt. No. 266-3 at 1-4 (Declaration of Ashley E. Tremain); Dkt. No. 266-3 at 48-49 (Declaration of David L. Wiley); Dkt. No. 266-3 at 56-57 (Declaration of Hal K. Gillespie).

Plaintiff seeks $720.00 for work done by Amy E. Gibson of Gibson Wiley PLLC,

-7-

who helped with jury selection, for 1.6 hours of work at an hourly rate of $450.00. Ms. Gibson has almost 20 years legal experience and specializes in employment litigation and jury selection. *See* Dkt. No. 264 at 2; Dkt. No. 266-1 at 8; Dkt. No. 266-3 at 5-22 (Declaration of Amy Gibson); Dkt. No. 266-3 at 47 (Declaration of David L. Wiley); Dkt. No. 266-3 at 55-56 (Declaration of Hal K. Gillespie); Dkt. No. 266-3 at 66-67 (Declaration of Rod Tanner); Dkt. No. 277.

Plaintiff seeks $2,610.00 for work done by Barry S. Hersh of Hersh Law Firm, P.C., who helped with jury selection and mock trial, for 5.8 hours at an hourly billing rate of $450.00. Mr. Hersh has over 17 years experience, is board certified in labor and employment law, and specializes in employment litigation. *See* Dkt. No. 264 at 2; Dkt. No. 266-1 at 8; Dkt. No. 266-3 at 23-25 (Declaration of Barry S. Hersh); Dkt. No. 266-3 at 47-48 (Declaration of David L. Wiley); Dkt. No. 266-3 at 55 (Declaration of Hal K. Gillespie); Dkt. No. 277.

Plaintiff seeks $13,711.50 for work done by Robert E. McKnight, Jr., of counsel to the law firm of Marek, Griffin & Knaupp, who helped prepare the motion for fees and costs, for 14.30 hours at an hourly rate of $495.00 ($7,078.50) for work done prior to the filing of original motion and 13.40 hours at an hourly rate of $495.00 ($6,633.00) for work done after the original motion was filed. Mr. McKnight has over 22 years legal experience and specializes in employment litigation, including civil rights claims, and he is the author of "Representing Plaintiffs in Title VII Cases" (Wolters Kluwer, 4th ed. 2014).

Mr. Hersh also has experience handling fee applications and appeals. Mr. Hersh

declared that he made contemporaneous time records and described the work performed, and he attached supporting time entries to his declaration. *See* Dkt. No. 264 at 2; Dkt. No. 266-1 at 8; Dkt. No. 266-3 at 26-33 (Declaration of Robert E. McKnight, Jr.); Dkt. No. 266-3 at 46-47 (Declaration of David L. Wiley); Dkt. No. 266-3 at 54-55 (Declaration of Hal K. Gillespie); Dkt. No. 266-3 at 65-66 (Declaration of Rod Tanner); Dkt. No. 277.

These amounts do not include reductions taken by Plaintiff's attorneys in an exercise of their billing judgment. *See* Dkt. No. 265 at 4-5. "To determine the number of hours reasonably expended on a case, a plaintiff must show that billing judgment was exercised. Billing judgment is usually shown by the attorney writing off unproductive, excessive, or redundant hours." *Green v. Adm'rs of Tulane Educ. Fund*, 284 F.3d 642, 657 (5th Cir. 2002) (citations omitted), *abrograted on other grounds by Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53 (2006); *see also Hensley*, 461 U.S. at 434. "If there is no evidence of billing judgment, however, then the proper remedy is not a denial of fees, but a reduction of the hours awarded by a percentage intended to substitute for the exercise of billing judgment." *Walker v. City of Mesquite, Tex.*, 313 F.3d 246, 251 (5th Cir. 2002) (internal quotation marks omitted).

Here, Mr. Sanford explained that he deducted 50% of the time that he and Mr. Norris spent in one-on-one conferencing with Plaintiff and that he also deducted 50% of all travel time in the case. *See* Dkt. No. 265 at 4-5; Dkt. No. 266-1 at 5-6 (Declaration of Brian Sanford). The amount also does not include a voluntary 10% reduction in the total amount of attorneys' fees ($577,627.25) attributable to Mr. Sanford and his two

associates, Mr. Norris and Ms. Tremaine, as an adjustment for results obtained, which Mr. Sanford made in the exercise of billing judgment. *See* Dkt. No. 265 at 6-7, 15-16; Dkt. No. 266-1 at 97. In response to Defendant's objections, Plaintiff also reduced the amount of fees sought to account for the time to plead claims in the original complaint that were omitted in the First Amended Complaint (.5 hour at Mr. Sanford's $650.00 hourly rate), *see* Dkt. No. 276 at 2 n.2, and for hours incorrectly charged for work that was actually done in the *Lemanski* case (.5 hours at Mr. Sanford's $650.00 hourly rate and 2.5 hours at Mr. Norris's $250.00 hourly rate), *see id.* at 9 n.7, Dkt. No. 277 at 2 n.1 & n.3.

Plaintiff does not seek an enhancement of the resulting lodestar amount based on the *Johnson* factors, explaining that, in Plaintiff's view, "the lodestar fee already captures all of the *Johnson* factors relevant to setting a reasonable fee for this action," with the "only possible exception [being] *Johnson* factor number seven ('the results obtained')," as to which, as noted above, Plaintiff voluntarily imposed a 10% reduction. Dkt. No. 265 at 2 n.7, 14-15.

Defendant does not challenge the hourly rates charged by Plaintiff's attorneys, the costs of court, or postjudgment interest request. And it acknowledges that Mr. Sanford's requested hourly rate is justified by his skill, experience, and accomplishments in the area of employment civil rights. *See* Dkt. No. 270 at 16-17.

But Defendant does challenge the amount involved in Plaintiff's request for attorneys' fees in relation to the results obtained on the single Title VII claim and argues that Plaintiff should not recover attorneys' fees for claims on which he did not

prevail and urges the Court to disallow recovery for attorneys' fees attributable to those claims and to then, after making reductions for severable, non-prevailing claims, further reduce Plaintiff's fee award to reflect the limited results obtained. *See* Dkt. No. 270 at 4-11. And Defendant asserts that "the award for the plaintiff's supplemental fees and costs should be reduced by the same proportion as the award for fees and costs as a whole." Dkt. No. 279 at 3.

Plaintiff was a tenured professor who was terminated by Defendant. Plaintiff originally sued Defendant, Texas A&M University System, Dan R. Jones, Larry F. Lemanski, Christine Evans, and Ben W.-L. Jang. *See* Dkt. No. 1. He later added Michael McKinney as a defendant. *See* Dkt. No. 40. McKinney was the Chancellor of Texas A&M University System. Jones was Defendant's President and Chief Executive Officer. Lemanski was the Provost and Vice-President of Academic Affairs. Evans was the former Dean of the College of Arts and Sciences and subsequently a professor of agricultural sciences. Jang was the Head of the Chemistry Department and a chemistry professor.

In his original complaint, Plaintiff asserted a Title VII retaliation claim against both Defendant and Texas A&M University System, alleging that they retaliated against him because he opposed discriminatory practices. He asserted claims under 42 U.S.C. §§ 1983 and 1985 and the First and Fourteenth Amendments against all Defendants except McKinney, alleging that they conspired in harassment, leading to his suspension, and in seeking his discharge, harmed his reputation, made false charges against him, and caused Defendant or Texas A&M University System to fail

to give Plaintiff an opportunity to clear his name and to violate its tenure policy and agreement and other policies and rules. Plaintiff sued Defendant for breach of an employment contract and Jang for tortious interference. Plaintiff sued Lemanski, Evans, and Jang for defamation.

In his Second Amended Complaint, Plaintiff expanded his allegations. He alleged a Title VII retaliation claim against Defendant, alleging that Defendant retaliated against him because he opposed prohibited practices and participated in protected activities. He asserted a Section 1983 First Amendment Claim against the individual defendants, alleging that they violated his rights to free speech and free association and retaliated against him because he exercised his First Amendment rights. He asserted a Section 1983 Property Rights Due Process Claim against McKinney, Jones, and Lemanski in their individual capacities, alleging that they deprived him of continued employment and tenure with due process. He asserted a Section 1983 Liberty Interest Due Process Claim against the individual defendants, alleging that they deprived him of his liberty interest in his reputation without due process. And he alleged a defamation claim against Jones, Lemanski, Evans, and Jang, in their individual capacities, alleging that they repeatedly libeled and slandered him.

In his First Amended Complaint, Plaintiff abandoned his claims against Texas A&M University System and his claims for violations of Section 1985, breach of contract, and tortious interference. *See* Dkt. No. 23. Plaintiff's claims for Section 1983 retaliation, property interest due process, and liberty interest due process and claims against McKinney, Jones, Lemanski, and Evans were dismissed in two summary

judgment rulings. *See* Dkt. Nos. 100, 105, 151, 162, 163, & 164. And his claim for

defamation against Jang was dismissed at trial. Thus, the only claim that was tried

to the jury was Plaintiff's Title VII retaliation claim against Defendant.

"The Supreme Court has twice made clear that 'the most critical factor' in

determining reasonableness of a fee award in a civil rights suit 'is the degree of success

obtained.'" *Migas v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998) (quoting

*Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (quoting *Hensley*, 461 U.S. at 436)). As the

Supreme Court has explained

> Where the plaintiff has failed to prevail on a claim that is distinct in all
> respects from his successful claims, the hours spent on the unsuccessful
> claim should be excluded in considering the amount of a reasonable fee.
> Where a lawsuit consists of related claims, a plaintiff who has won
> substantial relief should not have his attorney's fee reduced simply
> because the district court did not adopt each contention raised. But where
> the plaintiff achieved only limited success, the district court should award
> only that amount of fees that is reasonable in relation to the results
> obtained.

*Hensley*, 461 U.S. at 440. Where a plaintiff's claims "involve a common core of facts or

[are] based on related legal theories," it may be "difficult to divide the hours expended

on a claim-by-claim basis." *Id.* at 435. In that instance, the district court "should focus

on the significance of the overall relief obtained by the plaintiff in relation to the hours

reasonably expended on the litigation." *Id.*

Thus, "[w]hen claims are based on different facts and legal theories, the district

court should treat the claims as separate suits and award attorneys fees only for time

expended on the successful claims. On the other hand, when the claims arise from a

common core of facts and involve related legal theories, the district court should

attempt to arrive at a reasonable fee award 'either by attempting to identify specific hours that should be eliminated or by simply reducing the award to account for the limited success of the plaintiff.'" *Wyatt v. Cole*, 928 F.2d 718, 724 (5th Cir. 1991) (quoting *Texas State Teachers v. Garland Indep. School Dist.,* 482 U.S. 782, 789 (1989)), *rev'd in unrelated part on other grounds*, 504 U.S. 158 (1992). "When the documentation of hours is inadequate for the court to identify those hours spent on prevailing claims which are separate and distinct from other claims, the district court may reduce the award accordingly." *Von Clark v. Butler*, 916 F.3d 255, 259 (5th Cir. 1990).

Defendant argues that the claims on which Plaintiff lost are severable from the Title VII claim on which he prevailed. Conversely, Plaintiff argues that his unsuccessful claims were not "distinct in all respects" from the successful claim for retaliation. *See Hensley*, 461 U.S. at 440 ("Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of the a reasonable fee."). Instead, Plaintiff argues that all of his claims are related because common to all are the facts that he opposed unlawful conduct, participated in the investigation of that unlawful conduct, and suffered retaliation because of his opposition and participation. *See* Dkt. No. 265 at 6. But Defendant observes that none of those are legally cognizable elements or allegations under Plaintiff's defamation claim or his two due process claims.

Plaintiff also argues that the facts supporting his Title VII claim pervade each

of the other claims and that all of Plaintiff's acts and almost all of his statements that were protected by Title VII were also protected by the First Amendment, specifically his complaints about Defendant promoting a particular religion and his opposition to Defendant's treatment of Dr. Chunki Shi on matters of religion. *See id.* at 6-7. But Defendant asserts that the many of the alleged unlawful acts that Plaintiff claims to have opposed, such as church-state entanglement, plagiarism, and nepotism, were immaterial to his Title VII claim and that most of his alleged acts and statements protected by the First Amendment, such as speaking out on lab safety, were not protected by Title VII.

Plaintiff also argues that the time spent on his due process claim contributed to the success of the Title VII claim because he used the procedural abuses and violations of the law and university policies and procedures as evidence of pretext for Defendant's retaliatory actions. But Defendant asserts that, at trial, most of the discussion of the committee investigations, Plaintiff's suspension, and the appeal committee proceedings dealt with the substantive merits of the charges against Plaintiff and the degree of involvement of Defendant's administrators, and not with allegations concerning procedural irregularities.

And Plaintiff characterizes the defamation claim as the most distinct claim but argues that, because it rested on undisputed evidence (a single memorandum), his counsel spent little time in discovery or trial on it. But Defendant asserts that Plaintiff's counsel devoted considerable time at trial reading excerpts from the memorandum to Plaintiff's character witnesses and asking if they agreed with the

statements and offered testimony attempting to discredit the memorandum's other signers.

Defendant also argues that the result obtained does not support the amount of attorneys' fees sought. At trial, Plaintiff told the jury that he sought "not more than $3.1 million nor less than $1.3 million" in damages. The jury awarded only $300,00.00 for back pay. The Court added $70,198.80 in prejudgment interest on that amount, plus $166,229 for two years of front pay, for a total recovery of $536,427.80 plus postjudgment interest. But those amounts were significantly less than the damages that Plaintiff sought – although Plaintiff explains that "[t]he demand for at least $1.3 million in damages included the still-live defamation claim" and contends that, "[o]n the Title VII claim alone, a total recovery of over $500,000 is a substantial success." Dkt. No. 276 at 10.

Defendant quantifies the percentage of the claims, paragraphs of factual allegations, and discovery efforts for the unsuccessful claims. But there is no precise rule or formula for determining whether counsel's time was reasonable in relation to the success achieved, and a request for attorneys' fees should not result in a second major litigation. *See Hensley*, 461 U.S. at 436-37. "The essential goal ... is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Fox v. Vice*, 563 U.S. 826, 131 S. Ct. 2205, 2216 (2011).

The undersigned finds that the amount of fees sought is not reasonable in relation to the results obtained on Plaintiff's Title VII retaliation claim and insofar as

it includes attorneys' fees that would have been expended solely on claims on which Plaintiff did not prevail. Plaintiff voluntarily reduced his attorneys' fees request by 10% to account for the results obtained. The undersigned recommends that the amount of attorneys' fees be further reduced by 20% to account for time spent related solely to claims on which Plaintiff did not prevail and which claims, including Plaintiff's First Amendment and defamation claims, were in large part separate and distinct from Plaintiff's Title VII retaliation claim and to account for Plaintiff's relative level of success on his Title VII retaliation claim, as to which he sought considerably more in front and back pay and damages than either the jury or the Court has awarded him.

Defendant also asserts that the amount of Plaintiff's attorneys' fees request should be further reduced for additional reasons.

First, Defendant argues that Plaintiff's vexatious litigation strategy unreasonably inflated the lawsuit, including the amount of attorneys' fees, and that, if Plaintiff had brought only a Title VII claim against Defendants, the amount of fees would have been significantly less. *See* Dkt. No. 270 at 3-4.

Second, Defendant argues that the award should be reduced for abusive discovery, including Plaintiff's needlessly prolonged deposition testimony and oppressive and unnecessary demands for production of documents. *See id.* at 11-12.

Third, Defendant argues that the attorneys' fees request should be reduced for unjustified excess and duplication, citing a few specific examples. *See id.* at 12-15. "If a party does not object to particular billing entries as inadequately documented, the court is not obligated *sua sponte* to sift through fee records searching for vague entries

-17-

or block billing. It is a common practice for courts to address only those potentially inadequate entries brought to the court's attention." *Hoffman v. L & M Arts*, No. 3:10-cv-953-D, 2015 WL 3999171, at *5 (N.D. Tex. July 1, 2015). Here, Defendant complains about multiple attorneys billing on the same matter and, specifically, about 12.7 combined hours by Mr. Sanford and Ms. Tremain on the First Amended Complaint, 60.4 combined hours by Mr. Sanford and Mr. Norris on five depositions, and 7.7 hours for Mr. Norris to wait for the verdict. Defendant also argues that the attorneys' fees should be reduced for indistinct billing entries and argues that some of the entries are expressed in very broad terms and not differentiated by subject.

But, as explained above, the Court should, in addition to Plaintiff's own voluntary 10% reduction and reductions made in an exercise of counsel's billing judgment, reduce the requested award by an additional 20%. The undersigned concludes that percentage reductions of this magnitude are sufficient to account for any time entries that are duplicative, excessive, or vaguely recorded and already account for a reduction of fees for Plaintiffs' bringing, and his counsel spending time on, claims other than the Title VII retaliation claim that alone went to the jury. *Accord* Dkt. No. 270 at 11 ("The discussion below may either result in deductions in addition to, or serve as further grounds for (if already included within), the reductions discussed above."); *Hoffman*, 2015 WL 3999171, at *5 ("And as the court explains below, it is applying a 20% threshold reduction, followed by a 30% reduction for block billing and 10% billing judgment reduction to the 721.7 hours for which Hoffman is seeking compensation. L & M has failed to show that percentage reductions of this magnitude

-18-

are insufficient to account for any time entries that are duplicative, excessive, or vaguely recorded.").

Further, the undersigned, who ruled on some of the discovery disputes in this case, does not find any basis in this record to further reduce Plaintiff's requested fee award on the basis of Defendant's continuing complaints about discovery matters or litigation strategy. *See, e.g.*, Dkt. No. 137 (rejecting many of Defendants' objections to Plaintiff's renewed motion to compel and ordering that Defendants must produce or provide Plaintiff any existing documents in their possession, custody, or control that are responsive to 16 discovery requests); *see also* Dkt. No. 151 at 11 (observing that "filing a motion to strike out of apparent spite over discovery disputes is not an appropriate reason to limit Plaintiff's response to the renewed summary judgment motion").

Accordingly, the undersigned recommends that the Court award Plaintiff his reasonable attorneys' fees in the total amount of $433,745.00 (80% of his total requested attorneys' fees of $542,181.25).

## Recommendation

The Court should grant in part and deny in part Plaintiff's Opposed Motion for Reasonable Fees and Costs [Dkt. No. 264, as supplemented by Dkt. No. 277] and award Plaintiff Nenad M. Kostić $433,745.00 in reasonable attorneys' fees under 42 U.S.C. § 2000e-5(k) and $62,551.93 in costs under 28 U.S.C. § 1920, plus postjudgment interest on this award of fees and costs from August 13, 2015, the date on which the Judgment was entered.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: December 28, 2015

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE